## Arthur P. and Saima E. Johnson
### v.
## John Johnson

[218 A.2d 43]

December Term, 1966

Present: **Holden, C. J., Shangraw, Barney and Keyser, JJ. and O'Brien, Supr. J.**

Opinion Filed February 1, 1966

*Parker, Ainsworth & Richards* for plaintiffs.

*Bernard R. Dick* for defendant.

**Barney, J.** The plaintiff, Arthur Johnson, is the twin brother of John Johnson, the defendant. Arthur and his wife brought this action in equity for specific performance to require John to convey approximately sixty-eight acres, constituting the land remaining in a certain Morris farm, according to the terms of a twenty-five year old option.

The controversy has its origin in a deed given by the defendant and his wife to the plaintiffs on April 27, 1940. For about ten years prior to that the defendant had owned the family farm, which he bought from his father's estate. The Morris premises formed a part of this farm. The plaintiffs prevailed upon the defendant to sell. to them seven acres of the Morris place so that they might build a home there. Part of the discussion related to the giving of the plaintiffs a right to purchase the balance of the Morris place eventually.

After the defendant had agreed to sell, the plaintiffs arranged with their attorney to have a deed prepared. The defendant and his wife came to the attorney's office to execute the conveyance. Although they had not previously seen the document, their evidence was that they signed it without reading it all through. Documentary stamps in the amount of fifty cents were affixed to the deed.

The conveyance contained the following provision:

The grantors herein further agree that the grantees shall have a first option to purchase all of the remaining portions of the so-called Morris Place located on both sides of said highway and at a price of Six Hundred Dollars, but only so long as the grantees own the within premises.

In 1956 the defendant sold to one Lemnah a three and one half acre piece off the Morris place for $700. The plaintiffs thereupon notified the defendant that they would have to give a release in order to clear Lemnah's title on account of their option. This was done, the quitclaim deed being prepared and executed by the plaintiffs in favor of the defendant, but transmitted directly to the Springfield Town Clerk's office without passing through the defendant's hands. It contained this language:

The grantee, in accepting delivery of this instrument, reaffirms the option upon all other portions of the so-called Morris land.

In 1962 the defendant discovered that the language of the option referred to a right to purchase all of the rest of the Morris place, some sixty-eight acres, for six hundred dollars. He immediately confronted his brother Arthur and accused him of attempting to cheat him. The defendant demanded that Arthur cancel the option and release his property, but was refused.

The defendant's position is that the option he and his wife understood they were giving involved only a right in the plaintiffs to have a first opportunity to meet any bona fide offer to buy the Morris place should the defendant decide to sell.

The defendant has never attempted to sell the Morris place, but, in 1963, he negotiated a sale of the standing timber on a part of the Morris place still in his name for the sum of $3000. Upon hearing of this proposed transaction, the plaintiffs brought this bill for specific performance of the option, thereby blocking the sale. At no time have the plaintiffs ever made a tender or communicated to the defendant an intention to exercise the option.

Arthur has always maintained that his interest in the land is to have control by ownership in order to give him protection against unwanted neighbors. He has said that the land is only worth $600 to him. This position is belied by the bringing of this action, since the timber transaction would not have affected John's ownership of the land itself, or prevent his complying with the claimed option. Success in this litigation would, however, give Arthur and his wife both the land and the three thousand dollar timber rights and take them away from John, for $600.

In response to the complaint of the plaintiffs the defendant filed a cross bill alleging that the option in the deed, to the knowledge of the plaintiffs which they fraudulently concealed from the defendant, did not embody the actual option agreement reached between the parties. Evidence, as already outlined, was presented on this issue as well as on the issue raised by the complaint. The chancellor refused to grant specific performance of the option agreement and went on to order its cancellation.

Although specific performance of a contractual obligation follows almost as a matter of course from proof of its existence, there is provision for the exercise of a judicial discretion, based on considerations proper for equity's concern. *Sparrow* v. *Cimonetti*, 115 Vt. 292,

304, 58 A.2d 875. The sufficiency of the consideration, the mutuality, certainty, and clarity, completeness, and fairness of the contract, its capability of proper enforcement by decree, and the presence or absence of any showing that it is tainted or impeachable, or that its enforcement would be unconscionable are elements relevant to the exercise of that discretion. *Bufton* v. *Crane,* 101 Vt. 276, 280, 143 Atl. 382; *Fowler* v. *Sands,* 73 Vt. 236, 237, 50 Atl. 1067. If the chancellor has granted or denied relief by the exercise of discretion based on such equitable considerations, the result is reviewable only upon a clear and affirmative showing of abuse. *Sparrow* v. *Cimonetti,* supra, 115 Vt. 292, 304.

The chancellor in this case found that, in spite of its presence in the deed, the parties never contracted in accordance with the terms of the option sought to be enforced here. According to testimony in the case the option John thought he was giving Arthur was not the option Arthur had incorporated in the deed, and, to say the least, there was no meeting of their minds. If the option in the deed did not represent an agreement actually reached between the parties it was not their contract and it would be unconscionable to enforce specific performance of it under the circumstances. *Hill* v. *Bell,* 111 Vt. 131, 135-136, 11 A.2d 211.

The fact that the defendant and his wife both signed the deed containing the option provision does not require its specific performance. Failure to read an instrument before signing it does not bar relief in equity, even to the point of reformation. *Burlington Savings Bank* v. *Rafoul,* 124 Vt. 427, 432, 209 A.2d 738; *Ward* v. *Lyman,* 108 Vt. 464, 472, 188 Atl. 892. Both the facts and the findings suggest that the variation between John's understanding of the agreement and Arthur's rendering of it in the deed was something more than inadvertent. This, of course, would add substantially to the equities favoring John's position. See *Ward* v. *Lyman,* supra, 108 Vt. 464, 471. It is not necessary to deal with that issue here, however, since the result is otherwise supportable.

The plaintiffs do attack certain of the findings, which they view as critical, as being erroneous and unsupported by evidence. They cite testimony of the defendant which acknowledges the existence of an option and claim that this amounts to an admission that there was no misunderstanding about the option in the deed. But the point at issue is not that the defendant denied he intended to give an option, but that he disputed the terms. This is adequately and correctly reported in the findings of the chancellor. The testimony further reveals that when

the defendant sold off a small parcel to one Lemnah, he did not recognize the application of any option burden until his brother brought it to his attention. The findings dealing with this conform to the evidence in all material particulars.

The plaintiffs also fault the chancellor for referring, in certain findings, to the option as giving a right to purchase "defendant's farm." In fact the acreage involved was variously referred to as the "Morris Place," "the Morris Farm," "Morris land," "the farm," and "the property involved." A reading of the findings discloses that there was no misunderstanding on the part of the chancellor as to what property the claimed option related to. This is made abundantly plain, also, by the judgment order, which clearly relates the option to the Morris place, so-called. The material findings are in accordance with evidence in the case and amply supported thereby.

The relief granted by the chancellor was cancellation of the option in the deed. This was one of the alternative remedies sought by the defendant in his cross bill. Although the granting of this specific remedy was not directly attacked by the appeal of the plaintiffs, their objection to relief in favor of the defendant is clearly evident. Therefore it is appropriate to pass upon the chancellor's order.

The equitable considerations justifying the denial of specific performance also support cancellation of the option. The remedy of cancellation is an appeal to the sound discretion of the court of equity. *Lariviere* v. *Larocque*, 105 Vt. 406, 466, 168 Atl. 559. The evidence sufficiently convincing the chancellor that the option contained in the deed never achieved the stature of a contract between the parties was likewise available, and presumably persuasive, in the issue of cancellation. That the defendant's evidence met the requisite degree of proof is implicit in the chancellor's findings and we must so construe them. *Ward* v. *Lyman,* supra 108 Vt. 464, 469. Since denial of specific performance rested on the absence of a consummated agreement as recited in the deed, its cancellation was a logical and necessary consequence.

The defendant, as grounds for confirming the result reached by the chancellor, argued other grounds relating to the invalidity of the option. The fact that it is not necessary for us to reach these issues is not to be taken as an adjudication that the option was, in other respects, valid or invalid.

*Decree Affirmed. Motion for Reargument Denied.*