## Richard Villeneuve v. Lemond and Doris Bovat

[262 A.2d 925]

No. 103-69

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed February 3, 1970

*Gravel, Bing & Shea,* Burlington, for Plaintiff.

*Richard Gadbois,* St. Albans, for Defendant.

**Barney, J.** This litigation comes down to a rather orthodox suit for specific performance of a written contract for the sale of described lands. Unless some countervailing equitable consideration exists, the relief sought is usually granted as a matter of course. *Fowler* v. *Sands,* 73 Vt. 236, 237, 50 A. 1067. In this case the chancellor denied the remedy, and we must reverse.

■■ The proceedings below were rather unnecessarily complicated by the election to carry forward the action at law for damages and the later equitable action simultaneously, in the name of consolidation. The pursuit of the remedy of specific performance operated to supersede the action at law, and placed the matter firmly in equity as to all relief. *Olcott* v. *Southworth,* 115 Vt. 421, 425, 63 A.2d 189. The presence and participation of the assistant judges in that jurisdictional area were unnecessary, and may be treated as surplusage.

There is remarkably little dispute between the parties as to the facts. About two-thirds of the thirty-odd requests for findings made by both sides were couched in identical language. Several others recognize identical facts. The plaintiff complains that the chancellor's findings do not reflect the issues or sufficiently report the essential facts as understood and requested by both sides. However, having both the requests and the findings before us, we are able to reach the issues of the appeal. See *Re Watkins Estate,* 114 Vt. 109, 130, 41 A.2d 180.

The contract signed by the plaintiff as buyer and the defendants as sellers described the boundaries of the land to be transferred. The plaintiff gave a check for five hundred dollars as a down payment, and the defendants promised to give a warranty deed of the property in exchange for the balance of the purchase price, in thirty days. The land was a part of lands owned by the defendants, and it was necessary for them to have it released from an FHA mortgage. In the meantime, before the thirty-day period had elapsed, the plaintiff discovered some misdescription of the lands conveyed to the defendants by their previous grantors. He suggested that this be corrected by a new deed from these grantors, and drafted such a proposed deed and letter of explanation to be sent to them in Maine. Since the defendants had been told by their mortgagee

that there was no defect in their title, they were reluctant to send on the corrective deed, but finally did so. It came back signed, but unwitnessed. By this time the thirty-day period had passed. Within that time the plaintiff had offered to close the transaction without waiting for the corrective deed, or the partial release of the mortgage. May 17, 1968, was the end of the original contractual period, and both sides agree that that limitation was waived. But, again, prior to July 1, 1968, the plaintiff requested that the defendants carry out the contract, this time by signing the deed and putting it and his check for the balance of the purchase price in escrow until the partial release was obtained. The partial release awaited merely a proper description which the defendants were now saying could only come from a properly executed corrective deed. It was the defendant's position, at this point, that it was up to the plaintiff to obtain the corrective deed, and they refused to convey without it. The plaintiff brought suit, first claiming damages for a lost sale of part of this property, and then asking, also, for specific performance.

The only objection to performance interposed by the defendants, and apparently relied on by the chancellor, is this one relating to the misdescription in their chain of title and the lack of a properly executed corrective deed. Nowhere in the case does any suggestion appear that the defendants do not in fact own the land at issue. Nevertheless, the chancellor denied any relief.

■ The defendants are seeking to convert the plaintiff's interest in receiving a good title into an obligation on his part to furnish a corrective to the defect in the chain of title, which is in fact their responsibility, and part of their contractual burden. Just how far the plaintiff's attempts to help them out of the difficulty may operate to handicap any claim of his based on such a defect, if title is warranted, is not at issue here. With the means at hand to correct the misdescription, it would seem that the defendants would be well advised to do so. But, most important, the discovery of this situation does not relieve the contractual burden, or bar specific performance, and the plaintiff is entitled to his conveyance. This is not a case of impossibility of performance, and the availability of equitable relief has been long settled. *Conant* v. *Bel-*

lòws Falls Canal Co., 29 Vt. 263, 272. See also, *Rutland Marble Co.* v. *Ripley*, 77 U.S. 339, 19 L.Ed. 955, 961, which points out that the development of subsequent handicaps to performance, not amounting to impossibilities, do not bar the remedy sought here.

Disappointment in the outcome of a bargain will not excuse performance of an agreement to convey. *Sparrow* v. *Cimonetti*, 115 Vt. 292, 301-3, 58 A.2d 875. A decree granting or denying specific performance must likewise have a more substantial foundation. Although this remedy is always considered to invoke the application of judicial discretion, this discretion is not untrammeled, but must be exercised in conformity with established principles and rules. *Sparrow* v. *Cimonetti, supra*, 115 Vt. 292, 304. Along with equity's usual concern for fraud, *Johnson* v. *Johnson*, 125 Vt. 470, 473, 218 A.2d 43, lists, as elements relevant to the exercise of judicial discretion in this kind of case, the sufficiency of the consideration, the mutuality, certainty, and clarity, completeness and fairness of the contract, its capability of proper enforcement by decree, and the presence or absence of any showing that it is tainted or impeachable, or that its enforcement would be unconscionable. None of these elements have been shown to be present so as to bar the regular application of the remedy; nothing has been shown to support the exercise of discretion to deny specific performance. Without such a basis, the decree cannot stand. *Gove* v. *Gove's Admr.*, 88 Vt. 115, 118, 92 A. 10.

Since the chancellor's view of the matter led him to refuse relief, he made no findings on the issue of damages. Thus, this issue has not been adjudicated, and the case will be remanded for further proceedings and findings, in order that the possibility of an unjust result may be avoided. *Olcott* v. *Southworth, supra*, 115 Vt. 421, 426.

*Decree reversed. The cause is remanded for the issuance of a new decree awarding the plaintiff specific performance of his contract with the defendants, together with such damages, if any, as may be established in further proceedings directed to that issue.*