## Ralph E. Sexton, II, and Willis F. Stoddard v. Donald T. Neun and Ramond H. and Anna L. Case

[306 A.2d 113]

No. 55-72

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed June 5, 1973

*William S. Roby, III, Esq.,* Burlington, for Plaintiffs.

*Henry R. Vanetti, Esq.,* of Richard E. Davis Associates, Barre, for Donald T. Neun.

*Young & Monte,* Northfield, for Raymond H. and Anna L. Case.

**Smith, J.** This proceeding, which formerly would have been brought in Chancery, was heard before the presiding judge of the Washington County Court on February 24 and 28, 1972. Findings of fact were made and filed on March 21, 1972, and judgment was entered on the same date.

Some understanding of the rather complicated factual situation of the case presented, as well as the relationships of the various parties, is needed to understand the judgment, and the exceptions to it.

The plaintiff, Ralph E. Sexton, II, seeks specific performance of a contract to convey lands, or in the alternative, damages, as against defendant Donald T. Neun, who contracted with him to sell such lands, as well as against the defendants, Rev. Raymond and Anna Case, to whom Neun subsequently conveyed the land in question. Plaintiff Willis F. Stoddard intervened in the action to attempt to recover from Neun, as his broker, a real estate commission on the contract of sale to Sexton.

The judgment below denied the prayer of the plaintiff Sexton for specific performance, and granted judgment for the defendants, Raymond and Anna Case, for their taxable costs. Plaintiff Sexton was awarded judgment against the defendant Neun in the amount of $600.00, without costs. Plaintiff Willis F. Stoddard was awarded judgment against Neun in the amount of $104.30, with his taxable costs.

Separate appeals have been duly taken by Ralph E. Sexton, II, plaintiff in the action, and Donald T. Neun, one of the defendants.

Defendant Neun was the owner of a tract of land in Moretown, Vermont, lying southerly of the Cox Brook Road, so-called, but without highway frontage on this or any other road. All parties agree on its location and extent. This land was acquired by Neun in 1963. Northerly of the parcel in question, and between it and the Cox Brook Road, lie lands of the defendants Case, acquired by them in 1952.

In the spring of 1970, Neun listed his property for sale with Stoddard, a real estate broker, on a non-exclusive basis for a selling price of $6600.00, with an agreed 10% commission. He furnished Stoddard with a plan of the property and told him that a right of way went with the property over the "Old Log Road" shown on the plan. Neun was of the firm belief that such road constituted his right of way to the Cox Brook Road.

In answer to an advertisement by Stoddard placed in a Boston Newspaper, he was contacted by plaintiff Sexton, who at a later date came to Vermont and looked over the property in company with Stoddard. After some negotiation between the parties, Neun, Sexton and Stoddard signed a "Deposit Receipt and Sales Agreement" which is an admitted exhibit in the case. The form used by Stoddard, who prepared

it, was of a standard variety except for the addition of a Tenth Clause which read:

> "Tenth—A right of way for the ingress and egress with Vehicles by the owner shall be a part of this transaction."

All the parties executed this document between June 9 and June 14, 1970. The purchase price was $6200.00, the agreed commission was $620.00, and Sexton paid Stoddard a $600.00 deposit. The closing date was set at July 10, 1970. Neun and Sexton left it up to Stoddard to get an attorney to search the title and draw up the deed, as well as arranging the closing and other details.

The attorney retained to search the title reported on July 7, 1970, to Stoddard, enclosing his title certificate. In it he indicated the absence of any right of way to the property of Neun, although, as the lower court indicated, such conclusion may well have been incorrect. In any event, all parties acted upon the assumption that no right of way did exist to the premises sought to be conveyed, and it was this assumption which resulted in the subsequent transactions which brought about this lawsuit.

Neun contacted the Laird Lumber Company, as well as the Rev. and Mrs. Case, seeking to obtain a right of way to the Neun property. Both parties refused to grant such an easement. However, Rev. Case did inform Neun that he would be interested in buying the Neun property at a price of Five Thousand Dollars in his letter of September 8, 1970.

The court below found that at no time during these transactions did the Rev. and Mrs. Case have any personal knowledge that Neun and Sexton had an outstanding sales contract. Neun did not reveal the reason for which he wanted the right of way to anyone. Stoddard also attempted to get a right of way from the Cases, but was also unsuccessful.

As early as the spring of 1970, Rev. Case, acting for himself and wife, commissioned Mr. Kingston, of Northfield, a real estate broker, as well as Mr. Gaylord, President of the Northfield Savings Bank, to act for them as agents in the securing of the Neun property. Mr. Gaylord was an intimate friend of the Rev. and Mrs. Case, had helped them in pur-

chasing the property they already owned, and he was contacted by the Cases on a personal friendship basis and not as the President of the Northfield Bank, and the presiding judge so found.

By letter of September 15, 1970, Neun, evidently feeling that he could not meet Sexton's requirement for record title to a right of way, and that the "reasonable time" specified in his sales agreement had expired, wrote Case accepting his $5,000 offer provided the deal was closed in three weeks and Case assumed 1970 taxes of $69.00. This letter was not received until September 25, 1970.

During all this period, Sexton, who was fully able to comply with the terms of the contract with Neun, advised Stoddard that he wanted the right of way made a matter of record. Stoddard had been informed by the Rev. Case, at the time he requested a right of way from him, that Case was interested in the Neun property, but at that time had had no reply to his letters regarding the matter from Mr. Neun. However, Stoddard did not advise Case of the sales agreement between Neun and Sexton.

On October 15, 1970, the Rev. Case wrote Mr. Gaylord to handle the details of the sale, forwarding his correspondence with Neun, a copy of Neun's deed and a $500 check, payable to Mr. Gaylord, to cover the deposit.

On November 10, 1970, Gaylord forwarded to the Cases a real estate contract drawn by Attorney Peter F. Young, Esq., who Gaylord, as agent, had commissioned to draw the contract and conduct a title search. Gaylord told the Cases where to sign the contract, and told them he had given Neun the $500 deposit. Gaylord then went on vacation, and Francis Leonard, an officer of the bank, took over the matter during his absence, but on a personal favor basis and not as a bank officer.

Stoddard knew on November 24, 1970, that the Neun property was being purchased by the Cases. He informed Leonard about the contract with Sexton concerning the land in question, and Leonard said he would inform Gaylord on his return and advised Stoddard to get in touch with Neun, which Stoddard did. Leonard did not indicate to Stoddard that he would inform the Cases of the information given him. Stoddard also informed Sexton on December 1, 1970, that the property was

being sold to an adjoining landowner, and Sexton, in his reply letter on December 29, 1970, indicated that he knew that the Cases were the purchasers. Sexton also stated that he intended to stand by his contract and did not ask for the return of his deposit. Stoddard, however, did return such deposit to Sexton by check, but such check was never cashed by Sexton.

The Cases paid $5000 for the land in question, plus $69 in accumulated taxes. The purchase by the Cases from Neun was consummated on December 5, 1970, and the deed recorded on December 26, 1970. Stoddard notified Sexton of this fact.

We turn now to the judgment order. Plaintiff Sexton claims that there is no competent record evidence that Sexton knew of the impending sale to Cases before it was actually consummated. Finding No. 40 states:

> "It is apparent that both Stoddard and Sexton knew of the impending sale to the Cases before it was actually consummated. Neither one of them took any steps to advise the Cases of the outstanding sales contract and the Cases never had any personal knowledge of its existence."

The record of the cause before us supports the finding of the lower court that Stoddard was advised by Attorney Fitz-Patrick, who was attempting to clear the title on the right of way, on November 24, 1970, that Neun was selling to Case. In fact, on that same day Stoddard called Mr. Leonard, who was handling the Cases' interest for Mr. Gaylord during the latter's absence. By letter of December 1, 1970, Stoddard advised Mr. Sexton of his knowledge, although not referring to the Cases by name. On December 29, 1970, Sexton wrote to Stoddard, referring to an undated telephone call between the parties, and in which letter he indicated that he knew that the Cases were the purchasers.

Plaintiff Sexton argues that there is no proof that the letter dated December 1, 1970 was received by Mr. Sexton before December 5, 1970. We do not find that this question was presented to the court below, and under our duty to support doubtful findings in favor of the decree, we believe that the lower court made a reasonable assumption that a letter sent December 1 from Northfield, Vermont, would be received

in Brookline, Massachusetts, the residence of Sexton, by December 5. *Abatiell* v. *Morse*, 115 Vt. 254, 259, 56 A.2d 464 (1949).

█ ˙ The letter from Stoddard to Sexton, dated December 1, 1970, states: "I am representing you and your interests", clearly indicating that he is the agent for Mr. Sexton. We believe that the lower court inferred the fact of agency from the evidence. *Lowe* v. *Green Mountain Power Corp.*, 111 Vt. 112, 117, 11 A.2d 218 (1940).

Plaintiff Sexton also claims error in the holding of the lower court that it possessed discretionary authority to deny specific performance on grounds of inadequate notice where the evidence showed, and the findings were made, that the Cases had constructive but not actual notice.

The constructive notice to the Cases, alleged by Sexton, is in notice to Leonard by Stoddard on November 24, 1970, of the outstanding contract between Sexton and Neun. There is no claim made that Rev. and Mrs. Case ever had any actual personal notice of the contract between Neun and Sexton. The presiding judge, in his conclusion of law, stated he was inclined to the view that notice to Leonard was imputable to the Cases, who was acting for them, with their knowledge, in the absence of Mr. Gaylord.

The presiding judge stated that he recognized that specific performance of a written contract for the sale of lands is ordinarily granted as a matter of course. But his conclusion was that, under the circumstances of this case, specific enforcement of the contract would be unconscionable.

█ A decree granting or denying specific performance must have a substantial foundation.

"Although this remedy is always considered to invoke the application of judicial discretion, this discretion is not untrammeled, but must be exercised in conformance with established principles and rules." *Johnson* v. *Johnson*, 125 Vt. 470, 473, 218 A.2d 43 (1966).

█ *Johnson* v. *Johnson, supra,* also states that one of the elements for the exercise of judicial discretion in a case of specific performance is that its enforcement would be unconscionable.

"Since the granting of relief lies in the court's discretion the result can be revised only when an abuse thereof clearly and affirmatively appears." *Sparrow* v. *Cimonetti*, 115 Vt. 292, 304, 58 A.2d 875 (1948).

The presiding judge below was obviously weighing the equities of the parties in the case before him. Supported by the evidence were his findings that the Cases had no actual knowledge of the contract between Neun and Sexton before they obtained a deed to the property here in dispute. Also supported by the evidence was his finding that both Stoddard and Sexton knew of the proposed sale by Neun to the Cases before a deed had passed between Neun and the Cases.

Although Leonard's knowledge of the contract between Neun and Sexton was imputable to the Cases because of his agency, the fact is that he did not inform the Cases of such knowledge. The presiding judge was faced with the contrasting factual situation that both Stoddard and Sexton had actual knowledge of the proposed sale by Neun to the Cases before such sale was consummated, but that neither Stoddard nor Sexton notified the Cases of Sexton's contract to buy the property. In his balancing of the equities between the parties we do not find that the plaintiff has clearly and affirmatively proved that the discretion of the presiding judge was abused in these equitable proceedings by his denial of the petition for specific performance. Such denial is affirmed. Sexton also asked for compensatory and punitive damages from the defendants. But the evidence and findings make clear that the property here in dispute was sold by Neun to the Cases for $5,000, which the presiding judge found to be the fair market value of the premises, while Sexton, under his contract with Neun, was bound to pay the sum of $6,200. Sexton has failed to show that he was deprived of any financial advantage which would have accrued from consummation of his purchase. There was also a failure of evidence to show what expense Sexton was put to by reason of the circumstances and litigation of the case. Without such showing of actual damages, the claim for punitive damages could not be sustained. *Newman* v. *Kendall*, 103 Vt. 421, 424, 154 A. 662 (1931). We affirm this part of the judgment order below.

█ We now consider that part of the judgment order which granted judgment to Sexton against Neun in the amount of $600. This, of course, was the deposit paid by Sexton to Stoddard at the time the "Deposit Receipt and Sales Agreement" was signed by Neun, Stoddard and Sexton. No objection seems to be seriously raised by any party to this part of the judgment order and it is affirmed.

█ The judgment order also grants Willis F. Stoddard judgment against defendant Donald T. Neun in the amount of $104.30, with costs. This judgment is based upon the right of Stoddard to recover of Neun $620, commission under the contract between Neun and Sexton, plus interest at 7½ per cent from June 14, 1970, to date of judgment, a total of $704.30, with his taxable costs, less the $600 he presently holds.

Defendant Neun attacks this part of the judgment on the ground that Stoddard, the real estate broker, did not procure in Sexton a buyer, ready, willing and able to purchase the property.

There can be no doubt from the findings and evidence that Sexton was at all times ready, willing and able to purchase the property agreed to be sold to him by Neun, the seller. He was a buyer procured by Stoddard under Stoddard's agreement with Neun. The reason that the sale of the land was never made by Neun to Sexton was the failure of Neun to furnish the right of way to the property then owned by him as was called for in the sales contract. This part of the judgment order is affirmed.

█ In view of the circumstances of the case which, as the presiding judge stated, was fraught with misunderstanding by the parties, with a lack of bad faith on the part of "anyone involved", let each party bear their own costs in this Court.

*Judgment affirmed. Let each party bear their own costs in this Court.*