Normand J. Dube v. Chauffeurs, Teamsters and Warehousemen, Local No. 597, Charles Raymond, Secretary-Treasurer, and Chittenden County Transportation Authority

[430 A.2d 440]

No. 144-80

Present: Barney, C.J., Larrow, Billings and Hill, JJ., and Shangraw, C.J. (Ret.), Specially Assigned

Opinion Filed March 31, 1981

*Peter E. Piche* and *George E. Taft,* Burlington, for Plaintiff.

*Saul Lee Agel* and *Lewis K. Sussman,* Burlington, and *Beins, Axelrod & Osborne, P.C.,* Washington, D.C., for Defendants.

**Barney, C.J.** This labor relations case has twenty questions certified here. Our disposition of the case will undoubtedly answer many of the questions, since it must treat the issues essential to adjudication. However, the statement of and response to those essential questions will be directed to limiting the opinion to the substantive questions raised.

The plaintiff has brought this action against both his employer and his union. His complaint of unfair labor practices charged the union with violating 21 V.S.A. §§ 1726(b)(1) and (3), which read as follows:

(b) It shall be an unfair labor practice for an employee organization or its agents:

(1) To restrain or coerce employees in the exercise of the right guaranteed to them by law, rule or regulation. However, this paragraph shall not impair the right of an employee organization to prescribe its own rules with respect to the acquisition or retention of membership therein, provided such rules are not discriminatory.

. . . .

(3) To cause or attempt to cause an employer to discriminate against an employee in violation of this title or to fail or refuse to represent all employees in the bargaining unit without regard to membership in such organization.

His employer was a municipal corporation, Chittenden County Transportation Authority, which operated a bus line. The bus company is a municipal employer under 21 V.S.A. § 1722(13). The plaintiff charged the employer with violating 21 V.S.A. §§ 1726(a) (1) and (3), which provide:

(a) It shall be an unfair labor practice for an employer:

(1) To interfere with, restrain or coerce employees in the exercise of their rights guaranteed by this chapter or by any other law, rule or regulation.

. . . .

(3) By discrimination in regard to hiring or tenure of employment or by any term or condition of employment to encourage or discourage membership in any employee organization.

The history of the matter is not disputed. When the bus operation began in June, 1973, the plaintiff was the first person hired. This made him at all times relevant to this case the most senior employee of this municipal employer. About two years later the union was certified as the exclusive bargaining agent.

From July 1, 1975, until early 1978 the plaintiff filled a position called "terminal duty." This assignment, like bus runs, was made available on the basis of seniority, and assignment of it and the runs was made on the basis of "bids."

The duties included removing and storing the fare boxes from the previous day's runs, monitoring the employer's radio frequency, calling in replacement drivers, answering the phone, and occasionally taking a run if a driver was late.

In February, 1978, plaintiff had the terminal duty. An incident occurred with respect to a missing fare box and the plaintiff was fired by the manager. The plaintiff requested that he be allowed to resign, instead, and the manager consented verbally.

As it developed later, the letter of resignation was not accepted. After about two weeks the plaintiff contacted the manager and asked for reinstatement to terminal duty. The manager consented to his return, but only as a driver. The plaintiff returned to work without any loss of seniority, at the recommendation of the employer and by secret ballot of the union members. The plaintiff filed no grievance with respect to the two-week lay-off, and the finding was that the plaintiff was not disciplined for the fare box episode.

During the absence of the plaintiff, terminal duty had been performed by the union steward. He had been out of work with a foot injury that kept him from driving extensively, and taking this position allowed him to return to work.

In April, 1978, the bus runs and terminal duty came up for their regular four-month bidding. Plaintiff sought to bid for terminal duty, but was unsuccessful because the shop steward claimed top seniority under the collective bargaining agreement. The plaintiff took his complaint to the manager who told him: (1) that the shop steward had, by contract, the highest seniority, (2) that there was a management right to refuse any employee bidding on terminal duty, and (3) that inclusion of that duty in the bargaining unit was a matter of discretion in the employer. The duty is considered an advantageous one, yielding overtime compensation regularly, as well as having other advantages.

The issues before the Board involved more than the claims of the plaintiff, dealing with union and employer rights under the collective bargaining agreement and the authorizing statutes in Chapter 22 of Title 21, Vermont Statutes Annotated. The union is not appealing the order, nor is the employer. Thus, many aspects of the decision are not here, and some of the issues must be sorted out and examined solely with respect

to the plaintiff's appeal. The order itself dealt entirely with directives concerning the union and the employer, and not with the complaint of the plaintiff.

As already noted, the plaintiff filed charges of unfair labor practices with the Labor Relations Board against both the union and his employer. He objected to a "superseniority" provision in the collective bargaining agreement, and the employer's use of it to keep him from terminal duty. Under that provision, the union shop steward had top seniority, regardless of length of service, not only with respect to layoff and recall, but also with respect to all contractual benefits where seniority is a consideration.

The plaintiff contended that use of the provision was an unfair labor practice. Without the provision, he would have had top seniority, and could have successfully bid for terminal duty.

The union answered that, among other considerations, the employer had earlier discharged the plaintiff for dishonesty and was unwilling to let him have a job requiring the handling of money. The charge of dishonesty is a result of the fare box incident.

The Board found that use of the superseniority provision for bidding purposes, including for terminal duty, was an unfair labor practice on the part of the union in violation of 21 V.S.A. §§ 1726 (b) (1) and (3). It also found that the employer's use of the provision was an unfair labor practice under 21 V.S.A. § 1726 (a) (3). The opinion, and the order, restrict use of superseniority to layoff and recall only.

The Board also concluded that terminal duty was part of the collective bargaining unit, so that inclusion of that position in the bargaining unit was not a matter of discretion with the employer, as its manager had claimed. The Board's order disposed of this issue adversely to the employer.

■ Nevertheless, the Board found that, in view of the fare box incident, the employer had a legitimate business purpose in barring the plaintiff from terminal duty. The Board determined that that decision was within the management rights of the employer. Since terminal duty involves the unsupervised handling of money from the fare boxes, the position requires an employee of unimpugned honesty. Article

IV (f) of the bargaining agreement provides that runs "will be given to the senior employee that qualifies." Because of the fare box incident, the Board found that the employer's decision that the plaintiff was not qualified came within the scope of a legitimate business purpose. This determination is justified by the facts and sound in law. The Board correctly rejected the plaintiff's contention that the employer was barred from asserting that the plaintiff was unfit for terminal duty.

The Board does acknowledge that, given a rejection of the plaintiff's bid for terminal duty by management hereafter, he might qualify for a grievance hearing on his fitness for the position. The Board determined, however, that his failure to have such a hearing to date was not the result of the employer's actions. This led the Board to conclude that a charge of discrimination against the employer could not be sustained. As a result, the Board found that it could not find the plaintiff entitled to recover the damages sought from the employer.

The plaintiff claims, however, that because of the improper acts of both the union and the employer, he has been wrongfully denied the opportunity to be the terminal duty man, with its attendant overtime, since his resignation and reinstatement in February, 1978. This dispute is all that remains of the original litigation before the Board.

The core of the controversy is the episode in February, 1978, which resulted in the plaintiff's submission of his resignation. He now argues that the handling of the matter by the employer as it did violates the employer's obligation to bargain in good faith concerning his disqualification from terminal duty.

More particularly, his argument here is that the employer did not notify or involve the union in the February fare box incident, so that his disqualification from bidding on the terminal duty was established without the protection of his bargaining agent. However, the facts established that union participation was never requested by him. The dismissal provisions and related grievance procedures of the contract were, moreover, avoided by the plaintiff's own deliberate selection of the route of resignation rather than dismissal. The plaintiff's reliance on the case of NLRB v. J. Weingarten, Inc., 420 U.S. 251 (1975), gives him no aid in establishing improper action by the employer with respect to the fare box

incident. The N.L.R.B. held, among other things, that the employee could waive his right to union representation, *id.* at 257, and the Court affirmed the Board's ruling. Here, the plaintiff, according to the facts, never asked for the assistance of his union, nor even alleged that he did so. In fact, the allegations under consideration here were not raised in the pleadings or proceedings below, and the Board, as well as the other parties, were not put on notice that the claim of a refusal to bargain in good faith was being raised. Ordinarily, that alone would be sufficient to dispose of the issue here, but since the case ultimately took such a wide range in other areas before the Board, it is appropriate to establish the lack of substance to the claim as well.

Since the Board did find that the superseniority was used improperly, the issue then becomes an inquiry as to whether that improper use supports a claim for damages by the plaintiff. His claim requires at least a demonstration that he would have been successful in bidding for the terminal duty position but for the invocation of superseniority by the union steward.

Again, the facts are to the contrary. As already noted, the employer had a legitimate business purpose in barring the plaintiff from terminal duty, regardless of the superseniority provision. Therefore, the plaintiff's right to recovery fails.

The union points out in its brief that, since grievances under the contract involved here are arbitrable, 21 V.S.A. § 1727 (f) might well, as a policy matter, bar an award of back pay here by the Board in any event. That statute expressly denies such awards by the Board in cases of suspension or discharge, and might be taken as indicating a legislative policy barring the Board from awarding back pay in the presence of arbitration. Although the contention is not without force, we need not pass on it at this time, since the case for damages has not been otherwise made out.

■■ The plaintiff also seeks, in this Court, to bring in the issue of punitive damages for the first time in this case. This he cannot do. *University of Vermont* v. *Town of Mendon,* 136 Vt. 400, 402, 392 A.2d 415, 416 (1978). Punitive damages, in any event, are not to be awarded in the absence of actual damages. *Sexton* v. *Neun,* 131 Vt. 372, 380, 306 A.2d 113, 118 (1973).

The substantive issues in this case have been reviewed, and the decision of the Labor Relations Board is validated. The Board correctly determined that the plaintiff has failed to establish a right of recovery. Since the essential substantive questions involved in the recitation of certified questions are sufficiently disposed of, those reaching beyond the four corners of the litigation before us are not to be answered because the responses would be speculative and advisory. *Hislop* v. *Department of Social Welfare,* 136 Vt. 205, 207, 388 A.2d 428, 429 (1978).

It should be pointed out that the purpose of the certification of questions on final appeals from administrative agencies is not the same as those encompassed in V.R.A.P. 5. In many cases administrative adjudications cover a wide range of issues, not all of which the parties seek to appeal. The certification is designed to designate the particular questions for which review is sought, particularly where they involve less than the entire proceeding, not provide a vehicle for the abstract determination of matters not at issue. In this case it is clear that the appellate function and final decision will be most effectively accomplished by an entry of judgment in the ordinary form.

*The order of the Labor Relations Board is affirmed.*