# Colony Park Associates v. John D. Gall and The Estate of Arthur W. Mason

[572 A.2d 891]

No. 88-193

Present: Gibson, Dooley and Morse, JJ., and Keyser, J. (Ret.) and Springer, D.J. (Ret.), Specially Assigned

Opinion Filed January 26, 1990
Motion for Reargument Denied February 28, 1990

*Thomas F. Heilmann & Associates, Inc.*, Burlington, for Plaintiff-Appellee.

*John J. Boylan, Jr.*, Burlington, for Defendant-Appellant Gall.

*Keith J. Kasper* of *McNamara, Fitzpatrick & McCormick*, Burlington, for Defendant-Appellant Estate of Mason.

**Dooley, J.** Plaintiff, Colony Park Associates, signed a contract to purchase forty-four acres of residential development land in Williston, Vermont from John D. Gall and Arthur W. Mason, hereinafter defendants.[1] When defendants refused to tender the deed, plaintiff sued for specific performance. The

---

[1] Arthur W. Mason died during the pendency of this action, and his estate was substituted as the party defendant pursuant to V.R.C.P. 25(a)(1).

trial court ruled in plaintiff's favor and defendants appealed, claiming that the court abused its discretion in awarding specific performance and committed numerous evidentiary and procedural errors. We affirm.

Defendant Gall authorized a real estate agent, Hal Benson, to place the property on the market in December of 1984. After a number of months, Malcolm Teeson, one of plaintiff's three partners, contacted Benson to express interest in the property. Teeson was also a real estate broker, and he and Benson arranged to split the commission if the sale were consummated. This arrangement was not expressly made in the eventual contract.

On August 9, 1985, plaintiff submitted a proposed contract to defendants, with a closing date of August 9, 1986. This offer was not accepted. On August 20, 1985, plaintiff made a second offer, also calling for closing in one year, on August 20, 1986, to purchase the land for a slightly higher price. Defendants accepted this offer.

The year-long delay was included to give plaintiff the opportunity to obtain state and local permits to build condominiums on the land. The sale was conditioned on plaintiff's success in obtaining these permits. The trial court found that plaintiff diligently pursued this task. Plaintiff encountered delays, however, when its petition for access to the town sewer line was first denied and later granted. Throughout the process, plaintiff kept Benson abreast of its progress. Defendants never expressed any concern over the permit process, nor did they inquire about, or arrange for, a closing as August 20, 1986 approached. On that date, title to the parcel was encumbered by liens and attachments and was therefore not marketable. The trial court found that "sellers could not have closed in August even had Colony Park demanded such a closing."

The broker proposed to postpone the closing date until September 10, 1986. Plaintiff and defendant Gall agreed to the extension, but defendant Mason refused. Plaintiff subsequently proposed a closing date of September 24, 1986. This was also rejected. Defendants never tendered the deed to plaintiff.

On October 23, 1986, plaintiff brought this action seeking specific performance of the contract of sale as well as damages, costs and attorney's fees. The case came to trial in 1988, and the court found for plaintiff and awarded it specific performance of the contract on March 29, 1988.

I.

Defendants argue first that specific performance should not have been awarded because time was of the essence and plaintiff failed to perform—that is, to tender payment—on time. Where time is of the essence, a buyer of land cannot compel delivery of the deed unless payment is tendered at the time specified in the contract. *Mouat v. Wolfe*, 150 Vt. 637, 639, 556 A.2d 99, 101 (1989). The premise of the argument was not satisfied here, however, because time was not of the essence in this contract.

Although the contract specified a closing date, that in itself did not make time of the essence.

> The general rule in equity is that time is not of the essence of the contract, and equity will not treat it as of the essence of the contract unless it affirmatively and clearly appears that the parties so regarded it. . . . It is not enough that a specific time be named in the contract; the court is to look at the whole scope of the transaction to see whether the parties really meant the time named to be of the essence of the contract.

*McLean v. Windham Light & Power Co.*, 85 Vt. 167, 182, 81 A. 613, 619 (1911) (citations omitted). Nothing in the contract here suggests that the closing date was an essential term, and certainly nothing in the circumstances at the time the contract was signed or in the subsequent conduct of the parties indicates otherwise. See *Carter v. Sherburne Corp.*, 132 Vt. 88, 92, 315 A.2d 870, 873–74 (1974). To the contrary, the circumstances indicate that time was not of the essence. The contract, like the offer before it, included a term specifying a closing date one year from the preparation of the document. Both parties understood that plaintiff had to apply for permits, as the contract was contingent upon their acquisition. During this process, plaintiff

kept defendants' broker informed of developments. For their part, defendants did not appear concerned as the year progressed; they did not inquire into plaintiff's progress and, most important, they did not prepare for an August 20, 1986 closing date. Specifically, they did not take the steps required to clear the property's title of encumbrances so as to permit its conveyance on August 20. Even if the language of the contract had conveyed the impression that time was of the essence, the doctrine cannot be used against a purchaser of property where the sellers *acted* as if time was not of the essence.[2]

Accordingly, the doctrine of "time being of the essence" was not a bar to plaintiff's action for specific performance. As we stated recently in *Mouat v. Wolfe*: "Where time is *not* of the essence, the buyer who tenders payment late *may* bring a suit in equity, depending on the reasonableness of the delay, to compel delivery." 150 Vt. at 639, 556 A.2d at 101 (emphasis in original). Here, plaintiff wrote to defendants on September 18, 1986, stating its readiness to perform its obligations under the contract and proposing a meeting to close the deal on September 24, 1986.[3] The requisite elements of an action to compel delivery were present.

---

[2] Defendants also argue that an extension of time for performance gives clear notice to the purchaser of a cut off date for performance, thereby making time of the essence as to the date of extension. Whatever the merits of this claim, it is an odd one for defendants to make since defendant Mason did *not* agree to an extension of the closing date, and we need not reach the issue.

[3] Defendants object that the trial court never made an express finding on this point, citing *Sullivan v. Sullivan*, 147 Vt. 407, 408, 518 A.2d 33, 34 (1986), for the proposition that a failure to make a critical finding warrants a remand. The missing finding in *Sullivan* was the hotly disputed value of a family business awarded to the husband in a divorce action. We remanded for reconsideration of the property disposition, stating: "Without a finding of the value of the stock, this property disposition, on its face, does not provide an adequate record for our review." *Id.* at 409, 518 A.2d at 34. Here, by contrast, the record is entirely adequate. While the trial court did not make an express finding that plaintiff was willing and able to close on September 24, that fact was in the record, stated in unambiguous terms, and was not disputed by defendants. We will not order a remand for the senseless formality of requiring the trial court to make express a finding of fact that is clear from the record and not in dispute.

## II.

Defendants next argue that, even if time were not of the essence, the trial court abused its discretion by awarding the remedy of specific performance. They contend that the court improperly weighed the several factors bearing on specific performance set forth in *Villeneuve v. Bovat*, 128 Vt. 345, 348, 262 A.2d 925, 927 (1970), and *Johnson v. Johnson*, 125 Vt. 470, 473, 218 A.2d 43, 45 (1966). They further contend that the court "reversed" the parties' burdens by concluding: "While recognizing specific performance as discretionary, we find no basis for exercising that discretion to deny plaintiffs their right to such a remedy." Defendants argue that the court should have determined whether to exercise its discretion to *grant* the "extraordinary remedy" of specific performance.

Defendants stretch the trial court's holding to fit their burden-shifting attack. In any event, the trial court's approach reflects the *Johnson* opinion on which defendants rely:

> Although specific performance of a contractual obligation follows almost as a matter of course from proof of its existence, there is provision for the exercise of a judicial discretion, based on considerations proper for equity's concern. The sufficiency of the consideration, the mutuality, certainty, and clarity, completeness, and fairness of the contract, its capability of proper enforcement by decree, and the presence or absence of any showing that it is tainted or impeachable, or that its enforcement would be unconscionable are elements relevant to the exercise of that discretion. If the chancellor has granted or denied relief by the exercise of discretion based on such equitable considerations, the result is reviewable only upon a clear and affirmative showing of abuse.

125 Vt. at 472–73, 218 A.2d at 45 (citations omitted). Because specific performance is the usual remedy for the seller's breach of a real estate contract, the trial court should look to the factors listed in deciding whether to deny that remedy. "Unless some countervailing equitable consideration exists, the relief

sought is usually granted as a matter of course." *Villeneuve*, 128 Vt. at 346, 262 A.2d at 925.

As to the specific factors identified in *Johnson* to guide the court's exercise of discretion, defendants urge that insufficiency of consideration, lack of mutuality, and the taint stemming from the fee-splitting arrangement of Benson and Teeson compel a denial of specific performance. We disagree.

The trial court considered the sufficiency of consideration for the land and was "unable to find from the evidence presented that the price paid was significantly less than its fair market value at the time." Although defendants had offered evidence of a higher value, the court reasoned that the higher figure was based on the incorrect premise that 130 units would be built on the site and on improper comparisons with other sites. Defendants do not contest the court's reasoning, nor have they shown that its finding of market value is clearly erroneous. See V.R.C.P. 52(a).

Defendants assert that the contract lacks mutuality on the ground that the remedy of specific performance would not have been available to defendants under the contract had plaintiff breached. The contract, however, while giving defendants "the option . . . [to] retain[] as liquidated and agreed damages" the amount of plaintiff's deposit upon plaintiff's breach, did not foreclose specific performance to defendants. The contract does not support the lack of mutuality argument.

Finally, defendants argue vehemently that the trial court abused its discretion by granting specific performance of the contract because the transaction was tainted by the arrangement of Teeson and Benson to split the commission upon sale of the property. According to defendants, the fee-splitting arrangement caused Benson to have "divided loyalties" and "constituted a breach of fiduciary duties." Defendant further argues that it violated a specific rule of the Vermont Real Estate Commission prohibiting undisclosed representation of more than one party in a real estate transaction. See Vermont Real Estate Commission Rule 2.11(1).

The problem with this argument is that defendants are unable to show any effect of the fee-splitting arrangement on the

controversy before the Court. The record is devoid of any evidence that Benson failed to loyally serve defendants' interests. Cf. *Swallows v. Laney*, 102 N.M. 81, 85, 691 P.2d 874, 878 (1984) (transaction void where broker sought to purchase property from his own principal but failed to disclose all material facts). Nor did Teeson's role prejudice defendants' interests. He was not defendants' agent and owed them no duty to disclose. The trial court found that "Sellers did not recognize Teeson as their broker, and they certainly never relied upon him." We have no cause to disturb these findings.

The trial court concluded: "In effect, nothing more has occurred than that Benson agreed to split his commission with a fellow broker—what is sometimes euphemized as 'professional courtesy.' Vis a vis sellers, is this commission split an act of consequence? We fail to see how." We agree. See *Banner v. Elm*, 251 Md. 694, 699–700, 248 A.2d 452, 455 (1968) ("Generally, where the broker is the agent of the seller there is nothing reprehensible in his agreeing to divide his commissions with the purchaser, as this is a personal sacrifice on the broker's part to further the interest of the principal . . . , even though his principal was kept in ignorance thereof.").

■ While we have examined individually the factors specified by defendants, we have also considered whether the combination of the factors together make enforcement of the contract unfair. We see no unfairness in granting specific performance on these facts—indeed, it would be unfair to deny it.

### III.

■ Defendants finally claim that numerous evidentiary and procedural rulings of the trial court were erroneous and deprived them of a fair trial. As to the evidentiary rulings identified by defendants, even if some or all were in error (an issue we do not reach), there is insufficient showing that defendants suffered any prejudice thereby. Defendants list several assertedly erroneous findings and conclusions, which they argue are based on the evidentiary errors. We have reviewed the findings and conclude that the errors, if any, are harmless or that the defendants' argument is really about the court's conclusions or the law

on which the court relied. In any event, we find no grounds for reversal.

■■ We have a similar reaction to the asserted procedural errors. Defendants have briefed only two issues here although they vaguely allude to others. First, the court denied a motion for a continuance after Arthur Mason died and his estate was substituted as the party defendant. The continuance was sought because the estate obtained an attorney new to the case. Motions to continue are directed to the trial court's discretion. *Kokoletsos v. Frank Babcock & Son, Inc.*, 149 Vt. 33, 35, 538 A.2d 178, 179 (1987). Defendants have failed to show that the court's discretion was exercised on grounds clearly untenable or to an extent clearly unreasonable.

■ Finally, defendants complain that the trial judge assumed too active a role in questioning witnesses. The trial court may question witnesses. See V.R.E. 614(b). If that questioning reaches the point where the judge is acting as an advocate and no longer can convey the appearance of impartiality, reversal may be warranted. See *Auger v. Auger*, 149 Vt. 559, 563–64, 546 A.2d 1373, 1376 (1988). Defendants have failed to show that the trial judge went too far in this case.

*Affirmed.*