## Green Mountain Realty, Inc. v. Harold and Irene Fish

[336 A.2d 187]

No. 188-74

Present: Keyser, Daley, and Larrow, JJ., and Shangraw, C.J. (Ret.),
Assigned

Opinion Filed April 1, 1975

*Mathew T. Birmingham, III,* of *Glover & Fink,* Ludlow, for
Plaintiff.

*Hanford G. Davis,* Brandon, for Defendant.

**Keyser, J.** Plaintiff brought this action to recover a commission of $1,500 claimed to be due from the defendants concerning the sale of certain real estate which the defendants owned in Pittsford.

The plaintiff alleged in its complaint that the defendants requested the plaintiff to procure a buyer of their property for $25,000; that it procured purchasers, a Mr. and Mrs. Polley, who made a deposit of $500, but the defendants refused to sell; that two weeks later the defendants asked plaintiff to procure a sale of the property for $26,500; and that thereafter defendants sold the property directly to the Polleys.

The defendants deny these allegations of the plaintiff, and further allege that there never was a listing agreement either oral or written as required by the rules of the Vermont Real Estate Board.

Hearing was by court which found for the plaintiff and entered judgment accordingly for $1,500. The defendants appealed.

A summary of the facts as disclosed by the findings follows.

The plaintiff corporation is owned and controlled by a Mr. and Mrs. Thompson who are licensed real estate brokers. In the summer of 1972, Mrs. Thompson and Mr. Fish were enrolled in a Dale Carnegie Course. The families became friendly socially and attended social functions together.

Mr. Fish had built and moved into a new house near his old home in Pittsford. One of the social gatherings was held in the new house and was attended by the Thompsons and others. At that time defendants asked the Thompsons to look over their old house. After doing so plaintiff told the defendants "they should get at least $25,000.00 for said property at which time the defendant agreed that was a fair and just figure."

About that same time, "the plaintiffs (sic) had as clients people by the name of Polley" who "wanted to buy or rent a house in the area." Mrs. Thompson "advised the Polleys that the defendants' house was available for rent" and directed them to the Fish property. This resulted in a rental lease agreement between the Polleys and defendants. Mr. Fish offered to pay a commission to plaintiff on the rental but Mrs. Thompson refused it saying "it was an accommodation."

Later, "the Polleys inquired of the plaintiffs (sic) if the defendants would sell said house." The plaintiff then checked with the defendants and were advised by them that they "might sell" and asked that the Polleys "make an offer." Plaintiff gave this information to the Polleys. Subsequently, Mrs. Thompson prepared a deposit and sales contract for the Polleys to purchase the Fish property for $25,000. Mrs. Polley then signed the contract and left a deposit of $500 with Mrs. Thompson. She then took the contract offering

to purchase the property for $25,000 to the Fish home. Mr. Fish was not at home and his wife refused to sign it.

After this Mr. Fish went to plaintiff's office and "stated that he desired $25,000 net for said premises and indicated that he would sell said premises for $26,500." Plaintiff advised the Polleys to this effect and then aided them to finance said premises. Hearing nothing further concerning the financing or sale, plaintiff inquired of Mr. Fish and learned that he was selling the property to the Polleys. The defendants did so in early 1973 for $25,500.

The court found that plaintiff did not have a written listing contract as required by the rules and regulations of the Vermont Real Estate Commission but rather relied upon "defendants' oral statements."

Effective July 1, 1969, the Legislature granted the Vermont Real Estate Commission the power to "adopt, amend and revise as it deems necessary, reasonable rules consistent with this chapter in order to carry out and effectuate its purposes." 26 V.S.A. § 2254. Pursuant thereto, in the manner provided by 3 V.S.A. § 803, the Commission adopted and promulgated its rules, the legality of which is not questioned. The rules included the following:

16. Listing Agreements

(1) ...

(2) Every listing agreement shall be in writing. It shall contain a clear and definite statement of the commission to be allowed the agent. It shall contain a clear and definite provision for its termination, properly identify the property, and contain all the terms and conditions of the sale and the termination date. It shall show the signature of all parties concerned. . . . All listings shall show the commission to be paid in percentage figures. Copies of listing agreements at the time they are executed shall be placed in the hands of all parties involved.

Rules and regulations enacted by administrative agencies pursuant to the power delegated to them have the force

and effect of law. *Smith* v. *Highway Board,* 117 Vt. 343, 347, 91 A.2d 805 (1952).

The plaintiff concedes and the court found that there was no written listing agreement entered into. Neither the proposed nor any other agreement was ever presented to Mr. Fish to sign. If, as plaintiff claims, it had an oral contract to sell defendants' property, it clearly was not in compliance with the law as set forth in Rule 16, *supra.*

■ Ostensibly, the purpose of this rule is for the protection of the public to establish fair dealings between parties, standardize the procedure and practices in the real estate business and to prevent fraud. Its purpose is similar to that of the statute of frauds, which, as is said in *First Nat'l Bank* v. *Laperle,* 117 Vt. 144, 149, 86 A.2d 635 (1952), "is to prevent a party from being compelled, by oral and perhaps false testimony to be held responsible for a contract he claims he never made." The wisdom of such a regulation becomes apparent in a case like this one, where the plaintiff clearly began negotiations as the agent of the buyer and now claims that at some unspecified time it became the agent of the sellers.

To recover a commission the burden was on the plaintiff to establish that the defendants had entered into a contract with it to sell their property and receive a commission of $1,500. The only legitimate evidence of such an agreement is, and can only be, by a listing agreement containing all the ingredients expressly mandated by law under the statute (Rule 16, *supra*). But what we have here is a total deficiency in such requirements.

■ To entitle the plaintiff to earn a commission from the defendants, it must be more than a procuring cause of the sale. It is essential that plaintiff have a listing agreement and be retained by the defendants to sell their property. Even though there was no written agreement the court made no affirmative finding that an oral agreement existed. Lacking an agreement there can be no commission due from the defendants even though plaintiff might have been the procuring cause of the sale.

Furthermore, there is no evidence or finding of any relationship or agreement between the plaintiff and Mrs. Fish who owned the property jointly with her husband.

The judgment is not supported by the findings and conclusions of law and cannot stand.

*Judgment reversed, and judgment entered for the defendants.*