## David Currier d/b/a Currier Real Estate and Joanne M. Day v. Philip Letourneau and Barbara Letourneau

[373 A.2d 521]

No. 265-75

Present: **Barney, C.J., Daley, Larrow, Billings, and Hill, JJ.**

Opinion Filed April 5, 1977

*Rexford, Kilmartin & Chimileski,* Newport, for Plaintiff.

*May & Davies,* Barton, for Defendant.

**Hill, J.** The present action was initiated in Orleans Superior Court by David Currier, a licensed real estate broker, and Joanne Day, a prospective purchaser, against the appellants Philip and Barbara Letourneau, the owners of land in Holland, Vermont. Currier and Day contended in their complaint that the Letourneaus breached a contract for the sale of real property at an agreed price of $33,000.00. Accordingly, Currier sought to

recover his broker's commission, and Day sought to recover her damages caused by the breach. The Letourneaus answered, denying any breach on their part and counterclaimed, alleging that Currier had violated his fiduciary duties as an agent, that Day had trespassed on their property, and that Currier and Day had fraudulently conspired against them in seeking to purchase their property for less than its fair market value.

The case was tried by jury. Following several days of hearings, the jury returned a verdict for the plaintiff Currier in the amount of $3,000.00, and a verdict for the plaintiff Day in the amount of $750.00. Defendants' counterclaim was denied. Judgments to this effect were ordered entered by the court. Defendants have taken their appeal from the judgments rendered below.

The record on appeal reveals that prior to March 13, 1973, the plaintiff Day came to Vermont in hopes of establishing a home here. Ms. Day had previously lived in Vermont and was well acquainted with Mr. Currier and his wife. Upon her arrival, Ms. Day took up residence with the Curriers and asked Mr. Currier if he could locate some suitable property for her to purchase. Currier showed Ms. Day three or four locations, but none aroused her interest. Currier also contacted the Letourneaus and informed them that he might be able to find a buyer for their property. Currier prepared an open nonexclusive listing agreement setting the purchase price at $35,000.00 and his commission at $3,000.00. This agreement was signed by Philip Letourneau, but was never duly executed by his wife Barbara. Shortly after procuring this agreement, Currier and Ms. Day visited the property. Ms. Day was pleased with the location and made an offer, through Currier, to buy the property. This first offer was rejected. After some discussion between Currier and the Letourneaus, a price of $33,000.00 was agreed to by all concerned. Currier drafted a deposit receipt and sales agreement which was signed by all the parties to the transaction. The sales contract provided for a closing on April 15, 1973. This date, however, was subsequently extended by mutual consent to April 30. By the scheduled closing date, Day had obtained all the necessary financing and was prepared to carry through on the purchase even though she had decided to leave Vermont and had asked Currier if he could re-sell the property for her. This contingency never came to pass since the Letourneaus failed to appear at the appointed location for the closing.

Subsequent to these events, the plaintiffs have maintained that the defendants remained obligated to convey pursuant to the contract. The defendants have steadfastly held that their duty under the agreement had lapsed because it was understood that the deal had to culminate before the effective date of the Vermont Land Gains Tax. The instant appeal comes before us as a result of this stalemate.

The appellants have briefed several questions for our review. It seems to us that our resolution of this appeal makes it unnecessary to discuss each point *seriatim.* For this reason, the opinion will proceed in terms of a general discussion with consideration of particular points that are not thus sufficiently dealt with. With this proviso, then, it appears that three grounds of error are alleged: (1) Whether the trial court erred by failing to grant the appellants' motion for a directed verdict; (2) Whether the trial court erred by admitting into evidence, over appellants' objections, certain testimony; and (3) Whether the trial court erred in its instructions to the jury.

## I.

It is a basic rule of appellate review that when passing upon the propriety of a denial of a directed verdict this Court will view the evidence in the light most beneficial to the nonmoving party, exclusive of any modifying evidence. *Lattrell* v. *Swain,* 127 Vt. 33, 239 A.2d 195 (1968). In so doing we are mindful of the fact that the weight of the evidence, the credibility of the witnesses, and the persuasive effect of their testimony are best left to the determination of the jury and are not to be reviewed by this Court. *Greenberg* v. *Giddings,* 127 Vt. 242, 246 A.2d 832 (1968); *Anderson* v. *Knapp,* 126 Vt. 129, 225 A.2d 72 (1966).

As far as the motion for a directed verdict concerns the claim for relief brought by Mr. Currier, we are of the opinion, on the basis of the uncontroverted evidence, that the trial court should have granted appellants' motion. Here, there is no dispute that the listing agreement between the parties was signed only by Mr. Letourneau, and provided that Currier receive a commission of $3,000.00, or ten per cent of the purchase price. Rule 16(2) of the Vermont Real Estate Commission, promulgated by the Commission pursuant to its statutory authorization, provides that:

> Every listing agreement shall be in writing. It shall contain a clear and definite statement of the commission to be allowed the agent. It shall contain a clear and definite provision for its termination, properly identify the property, and contain all the terms and conditions of the sale and the termination date. It shall show the signature of all parties concerned. . . . All listings shall show the commission to be paid in percentage figures.

In the case of *Green Mountain Realty, Inc.* v. *Fish*, 133 Vt. 296, 299, 336 A.2d 187 (1975), this Court ruled that:

> To recover a commission the burden was on the plaintiff to establish that the defendants had entered into a contract with it to sell their property and receive a commission. . . . The only legitimate evidence of such an agreement is, and can only be, by a listing agreement containing all the ingredients expressly mandated by law under the statute.

See also *Selected Listings Co.* v. *Humiston*, 135 Vt. 106. Clearly, there is no room for dispute that the listing agreement concerned here is fatally defective in that it lacks Mrs. Letourneau's signature and shows Currier's commission in a flat dollar amount. The law on this question is unequivocal; a duly executed listing agreement is the sole vehicle upon which a broker can predicate recovery of any commission he alleges is owed him. Given the facts of this case and the state of the law, it was error for the trial court to refuse to direct a verdict in favor of the appellants in respect to Currier's commission.

## II.

In connection with their motion for a directed verdict, appellants have argued that Currier, while ostensibly their agent, was throughout the transaction representing the plaintiff Day with her consent. Additionally, appellants allege that Currier and Day conspired to obtain the subject property fraudulently for less than its fair market value. On the state of the evidence, the Letourneaus contend that, as a matter of law, Day is prevented from recovering any damages founded on the wrongfully procured contract of sale.

As noted earlier, in reviewing denial of a motion for a directed verdict the record is to be taken in the light most favorable to the

prevailing party. The motion is viewed as properly denied when there is credible evidence tending to fairly and reasonably support the verdict. *Norton & Lamphere Construction Co.* v. *Blow & Cote, Inc.*, 123 Vt. 130, 131, 183 A.2d 230 (1962).

■ ■ The testimony of both plaintiffs demonstrates that neither sought to engage the other in any conduct inimical to the appellants' interests. It does appear that some time after the contract was executed Ms. Day did ask Currier if he could locate a possible buyer for the property. However, it cannot be said that Currier violated his fiduciary duties because he agreed with Ms. Day, before the deal between her and the appellants was entirely concluded, to help her dispose of the property once she acquired ownership. 12 Am.Jur.2d *Brokers* § 88. Fraud is never presumed, but in each instance must affirmatively be shown. *Union Twist Drill Co.* v. *Harvey*, 113 Vt. 493, 504, 37 A.2d 389 (1944). The question was one properly left to the jury. Their verdict as to appellants' liability to Day is amply supported by the record and will not be disturbed.

## III.

Appellants would also ask this Court to reverse the judgment entered below on the basis of their contention that the trial court erred by admitting certain alleged irrelevant and immaterial testimony.

■ Specifically, appellants point to three occasions during the trial when, in their opinion, the lower court erroneously permitted the appellees to elicit prejudicial and irrelevant testimony. The first such instance concerns testimony received from David Currier and one Thomas Adams involving Mr. Adams' interest, as a potential buyer, in the subject property. The evidence adduced from these witnesses, though in conflict on some points, indicates that Adams had dealt with both Currier and the Letourneaus, and had actively sought to purchase the real estate here in question. It is axiomatic that in order to be relevant, offered proof must support a rational inference related to an essential issue in the litigation. *In re Wells' Will*, 95 Vt. 16, 25, 113 A. 822 (1921). Throughout the present controversy, appellants have maintained that they did not convey the property subsequent to May 1, 1973, because of their alleged

understanding with the appellees that the deal would have to close before that date so they could avoid imposition of the Vermont Land Gains Tax. The testimony objected to, however, suggests another rationale for appellants' hesitancy to carry out their contract with Ms. Day - the very strong possibility of a more financially rewarding deal with Adams. If the Letourneaus did in fact discuss terms of sale with Adams, and refused to complete their deal with Ms. Day because of that fact, as is inferable from the testimony, the challenged evidence has direct bearing on the credibility of their proposed defense to the claim of breach, and was properly admitted. *Miles* v. *Vermont Fruit Co.*, 98 Vt. 1, 12, 124 A. 559 (1924).

The second allegation of error attributed to the trial court's evidentiary rulings is made in respect to the testimony of D. S. Bicknell, manager of the Federal Land Bank in Newport, Vermont. Mr. Bicknell testified that he had reviewed Adams' loan application for financing his proposed purchase of appellants' property. In so doing, Bicknell visited the site to appraise its fair market value. On the stand, Bicknell stated that it was his opinion that the land and house were together worth some twenty-eight thousand dollars as of the date of the breach. The appellants contend that such testimony was irrelevant, and that no basis existed for the acceptance of opinion evidence as to the value of the subject property. We cannot agree with this contention. In their counterclaim, appellants asserted that Currier acted fraudulently, together with Ms. Day, to acquire their property for less than its fair market value. The controverted testimony of Mr. Bicknell goes to this very question, and can in no sense be considered as immaterial. When allegations of fraud are raised, each circumstance relating to the transaction in issue that is capable of persuading the jury that the charge is or is not well founded is relevant and should be admitted. *Moncion* v. *Bertrand*, 98 Vt. 332, 337, 127 A. 371 (1925).

As for Mr. Bicknell's competency to offer an opinion as to the property's value, we think that the evidence clearly establishes a firm basis upon which Bicknell could render a credible opinion as an expert witness. Mr. Bicknell's testimony demonstrates that as manager of the Federal Land Bank he is frequently called upon to appraise real estate for the purpose of making loans. In this case, Bicknell visited the property and

compared it with other similar parcels. Given these facts, it is apparent that Bicknell was testifying about a type of property in which he had considerable expertise. The competency of a witness is a preliminary question to be determined by the trial court. Its decision is to stand unless it is made to appear from the evidence that it was clearly erroneous or founded on an error of law. *Green Mountain Marble Co.* v. *State Highway Board*, 130 Vt. 455, 468, 296 A.2d 198 (1972); *Farr* v. *State Highway Board*, 122 Vt. 156, 160-62, 166 A.2d 187 (1960). We are satisfied that Mr. Bicknell's opinion as to value was properly received by the trial court.

Finally, appellants urge us to find error in the lower court's admission of testimony of Alan Wing, an officer of the bank financing the Day-Letourneau transaction, that, in his experience, it was not unusual for Mr. Currier to absent himself from closings of real estate sales in which he had acted as broker. Obviously, this alleged point of error concerns only the circumstances surrounding the merits of Currier's claim for his commission, and the parties have briefed it as such. We have already determined, in an earlier portion of this opinion, that the judgment entered in favor of Currier was erroneous. In light of this, any discussion we might undertake of this particular point can have no utility in the resolution of the appeal. Accordingly, we will forego its consideration. *Estate of Delligan*, 111 Vt. 227, 240-41, 13 A.2d 282 (1940).

## IV.

One of the matters in issue during the trial of the case was whether notice of a defect in the appellants' title, communicated to the attorney retained by the appellants to draw up the deed of sale, would, under the circumstances, constitute notice to the appellants. The defect was material to the litigation since its discovery was the reason appellees say caused the need to extend the closing date until April 30. Appellants have alleged that they had no notice of such defect and were not informed of the changed closing date.

In connection with their defense of insufficient notice, the appellants now contend that the trial court's instructions on this point were in error inasmuch as the court assumed that the appellants were, at the time the defect was found, represented by

counsel, and that any notice given him would, as a matter of law, suffice as notice to them. An examination of the transcript, however, shows that the trial court made no such assumption, but instead properly instructed the jury as follows:

> Mr. May, you will recall, was asked by the Defendants to draw the deed for the sale. As to whether he continued to serve as attorney for the Defendants for their real estate transaction -- and thus their legal agent after he drew the deed and delivered it to them -- is a question of fact for you to determine.

This instruction comports with established law, and, as to the point covered, was as favorable to the appellants as they were entitled to. *Brown* v. *Evarts*, 128 Vt. 1, 258 A.2d 471 (1969).

In connection with the instructions delivered by the trial court, the appellants further assert that error may be found in the charge given on the subject of the alleged conspiracy existing between Currier and Day. The appellants argue that the court's instruction was too narrow in that it directed the jury's consideration of the alleged conspiracy only to the actions of the plaintiffs in obtaining an extension of the closing date.

■■ It is, of course, the court's duty to charge on every essential issue in the case. *Scanlan* v. *Hopkins*, 128 Vt. 626, 632, 270 A.2d 352 (1970). It is equally true that the court is not required to make every comment that conceivably could be made on the issues and evidence. The degree to which the court is to elaborate on the points charged lies within the sound exercise of its discretion. *L'Ecuyer* v. *State Highway Board*, 124 Vt. 462, 466-67, 207 A.2d 260 (1965). We have reviewed the entire text of the court's instruction on the question of the conspiracy, and, as a result, we are convinced that it adequately covers the points that are material to the claimed conspiracy. The court instructed the jury thusly:

> [A]nother allegation by the Defendants against the Plaintiffs is one of conspiracy. The Defendants have alleged that the two Plaintiffs acted in concert or jointly to obtain the Defendants' property for considerably less than its fair market value by inducing the defendants to extend the time for closing . . . so that Plaintiff Day could enter into a secret agreement through Plaintiff Currier to sell the property at a greatly enhanced price to the profit of both Plaintiffs.

The charge as given complies with the allegations raised by the appellants in their counterclaim and the evidence adduced in support of that claim at trial. We fail to see how it unduly limits the jury in its deliberation on this matter. In any event, the excepting party has the burden of establishing an erroneous instruction, and must further demonstrate that such error was prejudicial. *Levey* v. *Hall*, 119 Vt. 143, 152, 120 A.2d 568 (1956); *Collier* v. *Nolan*, 125 Vt. 82, 87, 211 A.2d 265 (1965). This the appellants have failed to do.

We have carefully reviewed the record in this case and can find no reason why the judgment in favor of the plaintiff Day should not be upheld. There was ample evidence brought forth at trial upon which the jury could fairly and reasonably find that at all relevant times Ms. Day was ready, willing, and able to fulfill her end of the bargain. The issue of whether the damages were the direct and natural result of the appellants' breach is a question of fact for the jury. Here, there was ample evidence to allow the jury to find that the damages sought by Ms. Day resulted directly and proximately from the breach. *Norton & Lamphere Construction Co.* v. *Blow & Cote, Inc., supra*, 123 Vt. at 134; *Meyer* v. *Furgat*, 133 Vt. 265, 268, 336 A.2d 169 (1975).

*The judgment of the Orleans Superior Court is reversed insofar as it regards the claim of the plaintiff David Currier, and judgment is ordered for the defendants. In all other respects the judgment is affirmed.*