Nikki N. Moses, d/b/a Moses Real Estate v. Claude B. Gagne,
Mariette Gagne and Rowland E. Peterson

[433 A.2d 315]

No. 394-79

Present: Barney, C.J., Billings, Hill and Underwood, JJ., and Daley,
J. (Ret.), Specially Assigned

Opinion Filed July 15, 1981

44

*Michael G. Furlong* of *J. M. Farrell Associates, Inc.,* Burlington, for Plaintiff.

*Lisman & Lisman,* Burlington, for Gagne.

*Kolvoord, Overton & Wilson,* Essex Junction, for Peterson.

Hill, J. Plaintiff Moses brought an action to recover a real estate commission from defendants Claude and Mariette Gagne and damages for the tortious interference with plaintiff's contractual relationships by defendant Peterson. The

case was tried by court. Based on findings of fact and conclusions of law the court rendered judgment for defendants.

Defendant Claude Gagne owned jointly with his wife Mariette property designated as buildings 1302, 1303 and 1306 Fort Ethan Allen apartments. These buildings had been listed for sale with various brokers as nonexclusive agreements. In September, 1976, John Larkin, a salesman for the plaintiff, heard that the apartments were for sale. He obtained a nonexclusive listing agreement signed only by Claude Gagne. The agreement listed 64 units in three buildings for a lump sum price. Each building contained a different number of units, 7 in 1303, 25 in 1302 and 32 units in building 1306. Larkin admitted at trial that he knew the seller wished to dispose of all three buildings as a package.

Larkin visited with two prospective buyers, David Duchaine and Charles Guyette. Duchaine was interested in buildings 1303 and 1306. Guyette was interested in 1302. Larkin kept Gagne informed of the progress of the discussions. Duchaine soon decided against buying. Larkin analyzed income and expenses as to building 1302 with Guyette. Larkin testified as follows:

Q. At some point did David Duchaine drop out of the picture, is that correct?

A. Right, he dropped out, I would say, after two and a half weeks.

Q. And did you continue your negotiations with Charles Guyette to purchase only building 1302, try to work that out for a purchase?

A. We spent one more night and then it was—Charlie Guyette kind of admired David Duchaine, thought if it wasn't good for Duchaine then it wasn't good for him. After Duchaine faded, it was only a couple more phone calls and Charlie was uninterested.

Q. Why did you stop working with Charlie Guyette on the purchase of this property?

A. As I recall he told me if Duchaine didn't want to go then why should he go. Duchaine is the old pro, and there's only $400. net.

The transcript discloses no evidence that any offer to purchase building 1302 was transmitted to Claude Gagne nor is

there evidence that a price for building 1302 as a single unit was ever established by Gagne with Larkin. These events occurred in October of 1976. No further communication relative to the sale of building 1302 to Guyette was made by the plaintiff or her agent nor was there any evidence of further contact between plaintiff or her agent and Guyette.

At a Christmas party that year defendant Rowland Peterson met Guyette. They discussed the commercial real estate market including the buildings at Fort Ethan Allen owned by Gagne. Guyette told Peterson that he had discussed the purchase of these buildings with Larkin, had seen them, but had been unable to purchase them because of lack of finances.

Peterson at that time had an open listing agreement, like plaintiff's, for the building package. After his conversation with Guyette he obtained separate listings for the three buildings. Guyette and Peterson then visited the buildings, and Guyette thereafter entered into a Deposit and Sales Agreement for building 1302. Peterson was named as the broker on the purchase agreement.

The sale of building 1302 was made from the Gagnes to Guyette. Peterson received a commission on the sale and executed a hold harmless agreement to the Gagnes in case any other broker was entitled to a commission.

## I.

Plaintiff challenges the conclusion of the lower court that the listing agreement was defective because it lacked the signature of Mariette Gagne as a party concerned. She claims that Claude Gagne signed as an agent for his wife and therefore their signature as a party concerned satisfied Rule 16 (2) of the rules of the Vermont Real Estate Commission.[1]

---

[1] (2) Every listing agreement shall be in writing. It shall contain a clear and definite statement of the commission to be allowed the agent. It shall contain a clear and definite provision for its termination, properly identify the property, and contain all the terms and conditions of the sale and the termination date. It shall show the signature of all parties concerned. If a listing is exclusive, or gives the agent the exclusive right to sell, it must have *Exclusive Listing* and/or *Exclusive Right to Sell* in BOLD FACE TYPE. All listings shall show the commission to be paid in percentage figures. Copies of listing agreements at the time they are executed shall be placed in the hands of all parties involved.

■ ■ The words "party concerned" in that rule do not mean "owner" as plaintiff apparently claims. The clear meaning of the phrase refers to a party to the listing agreement. Mariette Gagne was not a party to the agreement because she did not sign the agreement as required by the Rule. See *Littlefield* v. *Lamphere*, 139 Vt. 77, 422 A.2d 929 (1980). Plaintiff claims that Mariette Gagne became a party to the agreement through the signature of her husband and claims the lower court should have allowed testimony on such agency. Plaintiff directs our attention to that section of the agreement which warrants that the undersigned owner, Claude Gagne, is the owner of record of the property or has authority to execute the agreement. The claim is without merit. Claude Gagne purported to act for no one but himself. If he did in fact have authority to act for his wife, no exercise of it was involved. This does not, however, invalidate the whole listing agreement. See *Littlefield, supra.*

## II.

■ Plaintiff claims that, even if she cannot recover against both Gagnes, her rights to a commission from Claude Gagne cannot be defeated as a consequence of Claude Gagne misrepresenting himself as owner or authorized agent. We have held in *Littlefield* v. *Lamphere, supra,* that when a listing agreement is complete and proper in form, it binds the signatory to pay a commission if all the other terms of the contract have been fulfilled.

Therefore if all other terms of the contract have been fulfilled, Claude Gagne can be held liable for a commission.

## III.

Plaintiff bases her claim for a commission on the extension clause contained in the listing agreement. She does not rely on the "procuring cause" provision. The agreement contained the following clause:

> I further agree to pay a commission, if I shall sell this property within twelve months to any person with whom you shall have negotiated during the term of this agency.

■ ■   A listing agreement is a written contract between property owner and a broker and ordinarily must comport with the duly adopted rules of the Vermont Real Estate Commission. 26 V.S.A. § 2254; 3 V.S.A. § 803; *Green Mountain Realty, Inc.* v. *Fish*, 133 Vt. 296, 298–99, 336 A.2d 187, 189–90 (1975). We hold the extension clause contained in the listing agreement serves a valid purpose and is not contrary to public policy. We must now determine its meaning. "Negotiate" is the key.

■ ■   Negotiation is a dialogue or discussion with the purpose of agreement, directed to the adjustment of differences presented at the outset. *King* v. *Dean*, 15 Ohio App. 2d 15, 238 N.E.2d 828, 832 (1968). For there to be negotiation in this context, the efforts of the broker during the term of his relationship must have proceeded to the point where the prospect would be reasonably considered a realistic prospect for the purchase of the property. *Munson* v. *Furrer*, 261 Wis. 634, 53 N.W.2d 697, 699 (1952). An agreement need not be reached before we can say there has been negotiation. If that were the case, the extension clause would have little meaning.

■ ■   Ordinarily this would be a question of fact for determination by the trier. However, in the instant case the requirements of the clause were met on the facts found.

Tortious interference with plaintiff's contract rights is not, however, shown on the facts as found. The judgment in favor of Peterson must be affirmed, notwithstanding his possible liability to Gagne on his hold harmless undertaking.

*The judgment in favor of defendants Mariette Gagne and Rowland E. Peterson is affirmed. The judgment in favor of defendant Claude B. Gagne is reversed, and the cause remanded for entry of a plaintiff's judgment against him in an appropriate amount.*