## Susan MacDonald, et al. v. Charles Roderick, et al.

[603 A.2d 369]

No. 90-115

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed January 3, 1992

*Joseph C. Benning* and *Jenifer Jill Mathers*, Law Clerk (On the Brief), Lyndonville, for Plaintiffs-Appellees.

*Deborah T. Bucknam*, St. Johnsbury, for Defendants-Appellants.

**Dooley, J.** Charles and Nancy Roderick, defendants, appeal from a superior court judgment awarding plaintiffs, Susan MacDonald and Thomas Smith, a real estate sales commission. Defendants allege that plaintiffs fraudulently induced them to enter into a listing agreement with them. They further claim that because the listing agreement violated certain rules of the Vermont Real Estate Commission, it cannot be used to require them to pay a commission. We affirm.

Plaintiffs are real estate brokers who do business through a partnership called Century 21 Select Realty. In 1988, they employed Michael Griffin as a sales associate. In September 1988, defendant Charles Roderick asked Mr. Griffin to come to defendants' home in St. Johnsbury to discuss the sale of the home and surrounding land. After an initial meeting with defendants, Mr. Griffin prepared an exclusive sales listing and presented it to defendants for signature.

Defendants were interested in selling their home because they needed money to meet another financial obligation. Nancy Roderick was very reluctant to sell their home and left the room crying when the details of the listing agreement were being discussed. Both defendants asked Mr. Griffin whether they would have the right to cancel the agreement. At one point, Mr. Griffin directed Mr. Roderick's attention to a section of the pre-printed agreement, which provided:

This contract is not cancellable prior to its express termination date, unless by mutual consent of the parties hereto;

as long as affirmative selling efforts are made by Broker on Owner's behalf.

At another, he stated that defendants could cancel by giving written notice. He answered "yes" to an inquiry whether defendants could cancel at any time. The court found, however, that under a reasonable view of the circumstances at the time the promise was made, defendants' right to cancel expired when plaintiffs procured a qualified purchaser.

Both defendants signed the listing agreement, giving plaintiffs the exclusive right to sell the home and surrounding property for $225,000. The agreement provided that if the property were sold, plaintiffs would receive a commission of 10% of the sales price. Although the agreement stated that it would be effective for one year, the parties agreed that it should be effective for only thirty days because of defendants' urgent need for money. Mr. Griffin agreed to make that change in the agreement but did not do so.

Plaintiffs immediately showed the property and, on September 17, 1988, obtained a buyer at the terms specified by defendants. When the purchase and sale contract was presented to defendants, however, they stated that they no longer wanted to sell. Mrs. Roderick then wrote a letter to that effect and presented it to Mr. Griffin.

Plaintiffs brought suit for the commission in superior court. After trial without a jury, the court issued findings of fact and conclusions of law, holding that plaintiffs were entitled to the commission.

▮ Defendants' first argument on appeal is that the undisputed testimony showed there was constructive fraud as a matter of law, and that such fraud defeats plaintiffs' right to a commission. The constructive fraud claim is that because plaintiffs were in a fiduciary relationship with defendants, plaintiffs had a duty to disclose that defendants could not cancel the contract after plaintiffs produced a ready, willing and able buyer.[1]

---

[1] Relying on *Griffin v. Griffin*, 125 Vt. 425, 217 A.2d 400 (1965), defendants argue that the conduct of plaintiffs' sales associate was constructive fraud, even if it was not actual fraud. *Griffin* is a constructive fraud case in which this Court found a duty to disclose certain facts because of the fiduciary

The problem with this claim is that it is totally different from that presented to the trial court. The trial court asked each party to detail the elements of their claim or defense. In response, defendants stated that they had to prove that "Plaintiffs or their agent intentionally misrepresented a material fact, which was relied upon by the injured party, and that fact related to the subject matter of the contract." The trial court specifically relied on defendants' statement of the elements of the defense and found that there was no intentional misrepresentation of fact. Without contesting the court's findings,[2] defendants seek on appeal to change their theory of the case and have us rule that they can prevail based on nondisclosure, rather than on misrepresentation.

We will not ordinarily consider issues raised for the first time on appeal. *O'Brien v. Island Corp.*, 157 Vt. 135, 141, 596 A.2d 1295, 1299 (1991). We see no reason to deviate from this rule in this case. The trial court specifically asked defendants to detail their theory and followed it in making findings. Had defendants raised their nondisclosure theory below, we are confident that the trial court would have made appropriate findings and addressed it. We would be abandoning preservation requirements entirely in allowing this change of theory on appeal.

Defendants' second argument on appeal is that the listing agreement is invalid because it fails to comply with Rule 26 of

relationship between plaintiff and defendant's agent. See *id.* at 436, 217 A.2d at 415. *Griffin* does not suggest, however, that nondisclosure allows a defense of constructive fraud where it will not support a defense of actual fraud. The difference between constructive fraud and actual fraud lies in the mental element involved. See *Proctor Trust Co. v. Upper Valley Press, Inc.*, 137 Vt. 346, 354, 405 A.2d 1221, 1226 (1979) (constructive fraud is "wrongdoing without bad faith"). We have often applied to actual fraud cases the *Griffin* holding that nondisclosure can have the same legal effect as misrepresentation if there is a relationship of trust and confidence between the parties. See *Silva v. Stevens*, 156 Vt. 94, 106–07, 589 A.2d 852, 859 (1991). Thus, the real change of theory here is from a claim of misrepresentation to a claim of nondisclosure or concealment.

2 In their brief, defendants relied on what they termed "uncontradicted evidence" but did not challenge any of the trial court's findings of fact. In response to a question at oral argument, counsel for defendants suggested that some of the court's findings were clearly erroneous. That statement came too late to challenge the court's findings, and we have not reviewed them to determine whether they are supported by the evidence.

the Rules of the Vermont Real Estate Commission because (1) the identification of the type of listing agreement at the top of the document fails to comply with Rule 26(c)(1); and (2) the agreement contains an incorrect termination date in violation of Rule 26(c)(5). With respect to the first claim, Rule 26(c)(1) requires that the agreement contain:

> (1) Identification of the type of listing agreement in bold-face type at the top stating only one of the following:
>
> NONEXCLUSIVE (open)
> EXCLUSIVE AGENCY
> EXCLUSIVE RIGHT TO SELL

The listing agreement in this case is headed "EXCLUSIVE RIGHT TO LIST AND SALES AUTHORIZATION." Defendants argue that since the words are not identical to those in the rule, the agreement does not comply with the rule.

Defendants' second claim is based on Mr. Griffin's failure to change the listing period from twelve months to thirty days as agreed by the parties. Rule 26(c)(5) requires each listing agreement to contain the "specific expiration date."

There is no claim of prejudice with respect to either claimed violation of the rules. There was no confusion about what type of listing agreement was involved, and nothing to suggest that the agreement heading affected the dealings between the parties. Because the prospective purchaser was obtained well within the thirty-day deadline, to which the parties agreed, the failure to amend the agreement to show the actual termination date was of no consequence.

Nevertheless, defendants argue that, under *Green Mountain Realty, Inc. v. Fish*, 133 Vt. 296, 336 A.2d 187 (1975), violation of the Real Estate Commission rules automatically voids the listing agreement and prevents the broker's recovery of a commission. *Fish* involved an oral listing agreement and the effect of a Real Estate Commission rule that all listing agreements be in writing. We held the applicable rule had the effect of law and was intended to protect the public, ensure fair dealing between the parties, standardize procedure and prevent fraud. *Id.* at 299, 336 A.2d at 189. Drawing an analogy to the Statute of Frauds, we held that failure to comply with the rule's requirement that the listing agreement be in writing barred recovery

of a commission. *Id.*; see also *Currier v. Letourneau*, 135 Vt. 196, 200, 373 A.2d 521, 525 (1977) (listing agreement signed by husband, but not wife, is in violation of Real Estate Commission rule and thus invalid).

*Fish* and *Currier* were limited by *Littlefield v. Lamphere*, 139 Vt. 77, 79, 422 A.2d 929, 931 (1980), which held that a listing agreement signed only by a husband, without the signature of the wife who also owned the property, was enforceable against the husband despite noncompliance with a Real Estate Commission rule. See also *Moses v. Gagne*, 140 Vt. 43, 47, 433 A.2d 315, 318 (1981) (same). We have recently held that a broker's sharing of a commission with an officer of the purchaser-corporation did not defeat the corporation's right to specific performance, even if the fee-sharing arrangement violated the Real Estate Commission rules. *Colony Park Assocs. v. Gall*, 154 Vt. 1, 8, 572 A.2d 891, 895–96 (1990). Since there was no evidence that the fee-sharing arrangement had any effect on the fairness of the sales agreement or on the broker's loyalty to the sellers, we held that the violation of the rules was irrelevant to the transaction. *Id.*

■ The Real Estate Commission rules were adopted to protect the public. See *Vermont Ass'n of Realtors v. State*, 156 Vt. 525, 533, 593 A.2d 462, 466 (1991). The rules are part of a scheme of professional licensing and disciplinary regulation. See 26 V.S.A. §§ 2252, 2291–2299. Nothing in the statutes or regulations addresses the effect of violations of regulations on the broker's right to collect a commission. For this reason, the statutory scheme is different from those in which legislatures specify the consequences of deficiencies in listing agreements. See *Ranier Fund, Inc. v. Bloomfield Real Estate*, 717 P.2d 850, 853 (Alaska 1986); *Hossan v. Hudiakoff*, 178 Conn. 381, 382, 423 A.2d 108, 109 (1979); cf. 12 V.S.A. § 5652(b) (agreement to arbitrate is not enforceable unless it contains an acknowledgement of arbitration that follows "substantially" the statutory model).

■■ No statute requires that the violation of the regulation defeat plaintiffs' right to a commission. See *Coldwell Bankers-Gordon Co. Realtors v. Roling*, 703 S.W.2d 572, 576 (Mo. Ct. App. 1986); *Finlay Commercial Real Estate, Inc. v. Paino*, 133 N.H. 4, 8, 573 A.2d 125, 127 (1990). The regulations

do, however, reflect a public policy that may be used as a defense against a broker's enforcement of the listing agreement. See Restatement (Second) of Contracts § 179(a) (1981). In weighing whether to deny enforcement of a contract because of public policy, we will consider: (a) "the strength of that policy"; (b) "the likelihood that a refusal to enforce . . . will further that policy"; (c) "the seriousness of any misconduct involved and the extent to which it was deliberate"; and (d) "the directness of the connection between that misconduct and the term" of the contract to be enforced. *Id.*, § 178(3).

██ ██ We interpret our cases as involving a weighing similar to that set forth in the Restatement. See *My Sister's Place v. City of Burlington*, 139 Vt. 602, 613–14, 433 A.2d 275, 282 (1981) ("misconduct unrelated to the claim to which it is asserted" will not allow a defense to contract enforcement based on illegality). Based on that weighing, a violation of the rules of the Real Estate Commission with respect to the form or content of a listing agreement will bar recovery of a commission only if the violation somehow taints the agreement or makes its enforcement unfair. That taint will always be found where an agreement is oral because the requirement of a writing ensures that the parties are fully aware of the terms of the agreement. When, as here, the claim is that the violation occurred because of failure to use required language or because of the omission or misstatement of a required term, there will be no effect on the broker's right to recover a commission unless the violation makes recovery unfair in the particular case before the court.

██ There is no nexus in this case between the asserted violation of the Real Estate Commission rules and the dispute between the parties. Defendants were not prejudiced by the alleged violations. It is undisputed that if the agreement had fully complied with the rules, with a thirty-day listing period and a proper heading, the conduct of the parties would have been the same. Plaintiffs are entitled to their commission.

*Affirmed.*