# Hal Bensen v. John D. Gall and the Estate of Arthur W. Mason

[605 A.2d 841]

No. 90-466

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed February 7, 1992

*Christopher D. Ekman* of *Heilmann, Ekman & Associates, Inc.*, Burlington, for Plaintiff-Appellant.

*John J. Boylan*, Burlington, for Defendant-Appellee Gall.

*Keith J. Kasper* of *McNamara, Fitzpatrick, McCormick & Mertz*, Burlington, for Defendant-Appellee Estate of Mason.

**Dooley, J.** This is the second time that the events giving rise to this controversy have been before the Court. In *Colony Park*

*Assocs. v. Gall*, 154 Vt. 1, 572 A.2d 891 (1990), we affirmed an award of specific performance of a contract for the sale of land by defendants to Colony Park Associates (Colony Park). Plaintiff, a real estate broker, brought this action seeking a commission for the sale. The trial court granted summary judgment to defendants because plaintiff did not have a written listing agreement as required by Rule 2.11 of the Vermont Real Estate Commission. On appeal, plaintiff argues that language in the contract of sale met the requirement of the rule, that events in the specific performance trial collaterally estopped defendants from denying their obligation to pay the commission, and that denial of a commission will unjustly enrich defendants. We affirm.

By letter dated December 7, 1984, defendant Gall authorized plaintiff to sell the property. There was no written listing agreement. Colony Park became interested in the property and, on May 31, 1985, submitted to defendants a letter of intent detailing the terms on which they would purchase. This led to an August 20, 1985 contract of sale prepared on plaintiff's standard form. The following words were above defendants' signature:

> I AGREE TO SELL THE ABOVE DESCRIBED PROPERTY ON THE TERMS AND CONDITIONS HEREIN STATED AND AGREE TO PAY THE ABOVE SIGNED REALTOR AS FEE FOR SERVICES THE SUM OF *Ten percent (10%) of Selling price (excluding the $18,000. payable to Arthur W. Mason for foundation, etc.)* DOLLARS, OR ONE-HALF THE DEPOSIT IN CASE SAME IS FORFEITED BY PURCHASER, PROVIDED THE SAME SHALL NOT EXCEED THE FULL AMOUNT OF THE COMMISSION. COMMISSION TO BE PAID OUT OF FIRST MONEY RECEIVED.

Defendants refused to pay the commission and refused to close. Plaintiff sued for the commission.

The superior court dismissed the action because plaintiff failed to obtain a written listing agreement as required by Rule

2.11(2) of the Vermont Real Estate Commission.* In relevant part, the rule provides:

> (2) Before showing real estate for sale, lease or rent, you must have executed a written contract with the seller listing said real estate for sale, lease or rent, or the express permission of the broker who has such a listing agreement. A listing agreement shall contain:
>
> (a) Identification of the type of listing agreement in bold face type stating either: NONEXCLUSIVE (open); EXCLUSIVE AGENCY; EXCLUSIVE RIGHT TO SELL, LEASE OR RENT.
>
> (b) Clear property description and location.
>
> (c) All terms and conditions of sale, lease or rental.
>
> (d) The agreement date and specific expiration date not to exceed twelve (12) months from the date of agreement. A listing agreement cannot contain any provision for automatic extension or renewal beyond the expiration date.
>
> (e) A statement of the amount of commission to be paid the broker, clearly stated in the listing agreement.
>
> (f) The signatures of all parties to the listing contract.
>
> . . . .
>
> (4) Copies of all listing . . . contracts executed by a broker shall be given to all parties involved at the time of the execution.

In response to plaintiff's argument that the contract for sale of the property met the requirements of the rule, the court held that it did not contain all the items required by the rule and that a purchase-and-sale contract could not cure deficiencies in a listing agreement. The court also denied relief based on equitable estoppel and collateral estoppel.

We recently summarized the law with respect to listing agreements and the requirements of the rules of the Real Estate Commission in *MacDonald v. Roderick*, 158 Vt. 1, 603 A.2d

---

* As the rule has been amended, it has had different numbers while retaining the same substance for the purpose of this appeal. Originally, it was Rule 16. See *Green Mountain Realty, Inc. v. Fish*, 133 Vt. 296, 298, 336 A.2d 187, 189 (1975). The version cited by the trial court and quoted here as 2.11 is as it was amended in 1979. Now it is Rule 26. See *MacDonald v. Roderick*, 158 Vt. 1, 5, 603 A.2d 369, 372 (1992).

369 (1992). Drawing on our case law and the effect of public policy requirements on the enforceability of contracts as set forth in § 179(a) of the Restatement (Second) of Contracts, we stated:

> [A] violation of the rules of the Real Estate Commission with respect to the form or content of a listing agreement will bar recovery of a commission only if the violation somehow taints the agreement or makes its enforcement unfair. That taint will always be found where an agreement is oral because the requirement of a writing ensures that the parties are fully aware of the terms of the agreement. When, as here, the claim is that the violation occurred because of failure to use required language or because of the omission or misstatement of a required term, there will be no effect on the broker's right to recover a commission unless the violation makes recovery unfair in the particular case before the court.

*MacDonald*, 158 Vt. at 7, 603 A.2d at 373. The trial court here correctly denied plaintiff a commission because he failed to have a written listing agreement, unless there is a reason to except this case from the general rule. Plaintiff argues three such reasons.

The first is that enforcement of the rule gives defendants a windfall, because the undisputed evidence shows that they retained plaintiff and he produced a ready, willing and able buyer who paid defendants a purchase price above that sought by them. Plaintiff argues that under theories of unjust enrichment and equitable estoppel defendants should be required to pay the commission.

■ ■ It is clear that defendants retained the entire proceeds of the sale free of plaintiff's commission, even though plaintiff's work procured the sale. This is the necessary consequence of enforcing the Real Estate Commission rule by denying a commission when the broker fails to comply with it. To allow plaintiff to prevail on this argument would eliminate the enforcement mechanism for the rule. In cases from other jurisdictions on which plaintiff relies, the courts have held that violation of a statute or rule requiring a listing agreement to be in writing is not a defense to a broker's action for a commission.

See *Coldwell Bankers-Gordon Co. Realtors v. Roling*, 703 S.W.2d 572, 576 (Mo. Ct. App. 1986); *Finlay Commercial Real Estate, Inc. v. Paino*, 133 N.H. 4, 10, 573 A.2d 125, 128 (1990). In jurisdictions such as ours, where violation of the rule or statute requiring a written listing agreement is a defense to the claim for a commission, the defense cannot be avoided on unjust enrichment or equitable estoppel theories. See *Currie v. Marano*, 13 Conn. App. 527, 531–32, 537 A.2d 1036, 1038–39 (1988); *Maynes Real Estate, Inc. v. McPherron*, 353 N.W.2d 425, 427–28 (Iowa 1984); *Heyman v. Adeack Realty Co.*, 102 R.I. 105, 109–11, 228 A.2d 578, 581–82 (1967). These cases are consistent with the contract principles on which we relied in fashioning our enforcement rules, see *MacDonald*, 158 Vt. at 7, 603 A.2d at 372–73, because the broker is primarily blameworthy for the violation of the rule. See J. Calamari & J. Perillo, Contracts § 22–7, at 900–01 (3d ed. 1987). We cannot allow the relief plaintiff seeks when to do so would wholly undermine the enforcement of the rule.

Plaintiff's second argument is that the lack of a written listing agreement is cured by the provisions of the purchase-and-sale contract. If the purpose of the commission rule were solely to serve as the equivalent of a statute of frauds, this argument would prevail. See 12 V.S.A. § 181 (Statute of Frauds fulfilled if contract or "some memorandum or note thereof is in writing, signed by the party to be charged therewith"). The purchase-and-sale contract was signed by defendants and contained the essential terms of the commission contract.

The purpose of the commission rule, however, is broader. It is intended "for the protection of the public to establish fair dealings between parties, standardize the procedure and practices in the real estate business and to prevent fraud." *Green Mountain Realty, Inc. v. Fish*, 133 Vt. 296, 299, 336 A.2d 187, 189 (1975). The rule regulates listing agreements, as opposed to purchase-and-sale contracts or agreements to pay a commission. A listing agreement precedes the broker's services which are rendered pursuant to the agreement. We cannot view the purchase-and-sale contract as a listing agreement. See *Howland v. Schweir*, 7 Conn. App. 709, 714, 510 A.2d 215, 218 (1986) (services must be rendered pursuant to a listing agreement); *Del Greco Realty Co. v. Lamoureux*, 39 Conn. Supp. 95, 96–97,

469 A.2d 1232, 1233 (Super. Ct. 1983) (listing agreement must "precipitate the services").

This is more than a distinction of form. See *Green Mountain Realty*, 133 Vt. at 299, 336 A.2d at 189–90 (the "only legitimate evidence" of a contract between broker and seller is a "listing agreement containing all the ingredients expressly mandated by law"). The rule requires that the broker and seller agree on the terms under which services are rendered before the services commence, and that they sign a written document specifying the terms of that agreement, and each receive copies of the agreement. This standardization of procedure ensures that consumers of broker services are fully informed and are treated fairly.

The language of the purchase-and-sale contract on which plaintiff relies is largely "boilerplate" on plaintiff's standard form. Were we to hold that this language could be enforced without a written listing agreement, we would eliminate a major incentive for plaintiff to comply with the rule. Dispensing with the absolute requirement that parties work out the terms of a commission agreement at the onset of their relationship would permit the details to be worked out, instead, at the time of the sale of the property. This would be the case even though the bargaining positions of the broker and sellers may have changed significantly. The wisdom of the rule is apparent in the present case, in which the dispute was apparently caused, at least in part, by the absence of clear terms of agreement between the parties at the outset. See *Green Mountain Realty*, 133 Vt. at 299, 336 A.2d at 189 (wisdom of rule made apparent by changing relationship of broker and seller).

We conclude that as in other consumer protection situations, the circumstances call for the enforcement of a prophylactic rule under which a broker without a written listing agreement cannot recover a commission. See *Currier v. Letourneau*, 135 Vt. 196, 200, 373 A.2d 521, 525 (1977) (the law on the question is "unequivocal; a duly executed listing agreement is the sole vehicle upon which a broker can predicate recovery of any commission"). Licensed brokers are able to conform to this rule, and it is fair that they bear the risk of failure to obtain a written listing agreement. See *Thornton Real Estate, Inc. v. Lobdell*, 184 Conn. 228, 230–31, 439 A.2d 946, 948 (1981) (bro-

kers who fail to follow statutory requirement of a written listing agreement "do so at their peril"). Because we decide that the purchase-and-sale contract cannot serve as a listing agreement to comply with Rule 2.11, we do not address the trial court's conclusion that the language of the purchase-and-sale contract was inadequate because it did not cover all the terms specified in the rule.

Plaintiff's final argument is that defendants are collaterally estopped from denying the existence of a valid and binding listing agreement. This claim was presented to the trial court based, in part, on a finding of fact and a conclusion of law of the trial court in the specific performance suit between the purchaser, Colony Park, and the sellers, defendants in this action. The court found that defendants listed the property with plaintiff on December 7, 1984. The conclusion responded to defendants' argument that specific performance should be denied because the broker, plaintiff here, agreed without informing defendants to split his commission with a partner in Colony Park, who was also a broker. The court held that the commission arrangement had no effect on the availability of specific performance and added: "[Defendants] owed the agreed commission to Bensen: he was entitled to the full amount based on his having procured a willing buyer for the accepted purchase price." Plaintiff argued that the finding that there was a listing and the conclusion that defendants owed the commission were binding on them and determined this litigation.

Collateral estoppel, or issue preclusion, applies only if the following criteria are met:

> (1) preclusion is asserted against one who was a party or in privity with a party in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same as the one raised in the later action; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) applying preclusion in the later action is fair.

*Trepanier v. Getting Organized, Inc.*, 155 Vt. 259, 265, 583 A.2d 583, 587 (1990). Even if we assume that the issue of the plaintiff's entitlement to the commission was raised in the specific performance action, see *Berisha v. Hardy*, 144 Vt. 136, 138, 474

A.2d 90, 91 (1984) (collateral estoppel applies to issues "'necessarily and essentially determined'" in the earlier proceeding, quoting *Land Investment, Inc. v. Battleground Assocs.*, 138 Vt. 316, 326, 415 A.2d 753, 759 (1980)), there was not a full and fair opportunity to litigate it, and it would be unfair to apply preclusion here. The obligation to pay a commission, and the presence of an enforceable listing agreement, were peripheral to the issues in the specific performance action. To have required defendants to fully litigate the issues presented here in the earlier action would have created a largely irrelevant sideshow of proportions equal to the main action for no apparent purpose.

On appeal, plaintiff has shifted the focus of the collateral estoppel claim to positions defendants took during the trial of the earlier case and the court's statement, in response to evidentiary exceptions, that it would "assume that the execution of the Deposit Receipt and Sales Agreement by Mason . . . is a listing agreement." In support of this argument, plaintiff has provided us with excerpts from the transcript of the trial in the specific performance litigation that plaintiff did not bring before the trial court in this case. We conclude that plaintiff has failed to preserve this claim below and is precluded from raising it here for the first time. *MacDonald*, 158 Vt. at 4, 603 A.2d at 371.

*Affirmed.*