WYOMING REALTY COMPANY,
a Wyoming corporation, and Joe
Bowen, Appellants (Plaintiffs),

v.

Allen L. COOK and Carol A. Cook,
Appellees (Defendants).

No. 93–122.

Supreme Court of Wyoming.

April 21, 1994.

Frank J. Jones, Wheatland, for appellants.

Henry F. Bailey, Jr., Cheyenne, for appellees.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

THOMAS, Justice.

The issue presented by this case is whether the public policy of this state requires a written listing for the sale of real estate by a licensed broker in order for the broker to recover a commission in an instance in which a sale of the property was completed through the efforts of the broker. The trial court ruled "Wyoming Statutes and regulations of the Wyoming Real Estate Commission clearly indicate a public policy which requires written listing and commission agreements." A summary judgment was entered denying recovery of the broker's commission. An ancillary procedural question exists as to whether genuine issues of material fact foreclose the entry of a summary judgment. We hold the trial court's interpretation of the law was erroneous, and genuine issues of material fact require a trial. The summary judgment entered by the trial court is reversed, and the case is remanded for trial.

The appellants, Wyoming Realty Company and Joe Bowen (collectively Bowen), state the issues to be:

1. Do genuine issues of material fact exist which preclude the granting of summary judgment?

2. Does the public policy of this state require written listings for the sale of real estate by licensed brokers?

As appellees, Allen L. Cook and Carol A. Cook (Cooks), state the issues similarly:

1. Was the trial court correct in determining no genuine issue of material fact existed?

2. Was the trial court correct in determining public policy requires written listings for the sale of real estate by licensed brokers?

Bowen is licensed as a real estate broker, and he is the sole shareholder of Wyoming Realty Company, a corporation which has been in the real estate business in Wheatland for the past thirty-seven years. The Cooks have resided in the Wheatland vicinity for approximately seventeen years. Allen Cook is employed by Basin Electric Power Cooperative, and he spends an additional forty hours a week in ranching and real estate operations. Bowen and the Cooks had been involved in one previous real estate transaction out of which Bowen earned a $10,000 commission from the Cooks.

On April 1, 1991, the Cooks purchased a ranch known as the Dunlop or Ark-la Ranch. Within nine months, they sold the ranch to William R. and Barbara M. Whitney (Whitneys) for $600,000. The Cooks and Bowen never executed a written listing agreement for the ranch. The Cooks knew, however, that Bowen was trying to sell the ranch by advertising and showing it to potential purchasers during the summer of 1991. Allen Cook admits he gave Bowen consent to show the property sometime during that summer. The Whitneys responded to one of Bowen's advertisements concerning the ranch. They traveled from California and inspected the property in early December, and they purchased the ranch on December 20, 1991. Allen Cook concedes Bowen found the buyers (the Whitneys) for the ranch.

At the closing on December 20, 1991, the standard five percent commission, amounting to $30,000 in this instance, was discussed. The attorney for the Cooks prepared a $20,000 promissory note for Allen Cook to sign at the closing, which reflected the balance owed to Bowen on a sales commission of $30,000. At the closing, Allen Cook had to leave early. He did not sign either the promissory note or the closing statement, which also reflected the $20,000 promissory note. On December 23, 1991, Allen Cook wrote Bowen a check for $14,540.30, reflecting "commission, Ark-la taxes & filing fees." At a later time, Allen Cook requested his attorney to revise the $20,000 promissory note so it would be contingent on the Whitneys' continued monthly payments to him and obligate him to pay the additional commission only in installments.

Allen Cook refused to sign the second promissory note, as drafted by his attorney, because of a disagreement with Bowen over an unrelated, subsequent real estate transaction.

Bowen filed this action, based on a theory of *quantum meruit*, seeking to recover the $20,000 due on his sales commission; $3,306 for repairs that had been made at the ranch; and, in addition, damages for libel and malicious prosecution because of a complaint Cook had filed against Bowen with the Wyoming Real Estate Commission (Commission). After discovery had been completed on May 24, 1993, the district court granted a partial summary judgment sought by the Cooks, which denied recovery by Bowen of the balance of the sales commission. The district court also dismissed without prejudice the libel and malicious prosecution claim, ruling it was premature, and the court deferred disposition of the claim for repair work pending its resolution at trial. Bowen appealed the partial summary judgment entered by the district court.

The Wyoming legislature did contemplate the use of written listing agreements in enacting WYO.STAT. § 33–28–111 (1987). In subsection (a)(xx), the legislature, in establishing the disciplinary power of the Commission over licensees, included the power to discipline for:

Failing to obtain written listing agreements identifying the property and containing all terms and conditions under which the property is to be sold including the price, the commission to be paid, the signatures of all parties concerned and a definite expiration date; * * *.

This statute, as implemented by the Commission's rules and regulations, is primarily regulatory in nature.

The rules and regulations that have been promulgated also contemplate the use of written listing agreements by licensees. For example, the Commission's definition of written listing agreements is:

The term "written listing agreements" means any real estate agency employment agreement, including but not limited to buyer's brokerage agreement, seller's listing contract and property management contract.

WYOMING REAL ESTATE COMMISSION RULES AND REGULATIONS Section 3(g) (May 20, 1991).

The listing of property is referred to consistently a second time in the Commission's rules and regulations with respect to the furnishing of copies of documents:

> A broker, shall at the time of signing, deliver a copy of any document to the party or parties executing the same when such instrument has been prepared by the broker or under his supervision, or is within his control, including but not limited to instruments relating to the employment of the broker, the listing of property, the consummation of a lease, purchase, sale or exchange of property, or to any other type of real estate transaction in which he participates as a broker.

WYOMING REAL ESTATE COMMISSION RULES AND REGULATIONS Section 9(a) (May 20, 1991).

Nebraska has adopted legislation that provides:

> Every contract for the sale of lands between the owner thereof and any broker or agent employed to sell the same, shall be void, unless the contract is in writing and subscribed by the owner of the land and the broker or agent. * * *

NEB.REV.STAT. § 36–107 (1988 Reissue).

In *Kaus v. Bideaux*, 709 F.2d 1221 (8th Cir.1983), the United States Court of Appeals interpreted this statute in an instance in which the written listing agreement had expired, and the parties went forward under a verbal arrangement. It affirmed an award to a broker for the balance of a sales commission. The court stated:

> Defendants' primary contention is that the district court erred in concluding that Neb.Rev.Stat. § 36–107, which requires that sales agreements between real estate brokers and owners be in writing, did not bar plaintiffs from recovering the remaining balance of the commission. In reaching this conclusion, the court reasoned that this statute, an extension of the statute of frauds, see *Svoboda v. DeWald*, 159 Neb. 594, 68 N.W.2d 178 (1955), would not operate to preclude recovery because plaintiffs had fully performed under the oral agree-

ment, and that principles of equity and fairness required that the statute "not be allowed to shield defendants against plaintiffs' legitimate claim for services which were honestly rendered." Our review convinces us that the district court's conclusion was correct, and we affirm the judgment in favor of the plaintiffs on the basis of the court's well-reasoned opinion.

*Kaus,* 709 F.2d at 1222.

The regulatory statute adopted in Wyoming, taken together with the regulations of the Commission, appear, at best, to evidence a legislative intent to structure a special statute of frauds. They are similar in tenor to the statute of frauds which provides:

> (a) In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof be in writing, and subscribed by the party to be charged herewith:
>
> (i) Every agreement that by its terms is not to be performed within one (1) year from the making thereof;
>
> (ii) Every special promise to answer for the debt, default or miscarriage of another person;
>
> (iii) Every agreement, promise or undertaking made upon consideration of marriage, except mutual promise to marry;
>
> (iv) Every special promise by an executor or administrator, to answer any demand out of his own estate;
>
> (v) Every agreement or contract for the sale of real estate, or the lease thereof, for more than one (1) year;
>
> (vi) To charge any person upon, or by reason of a representation or assurance concerning the character, conduct, credit, ability, trade or dealings of another, to the intent or purpose that such other may obtain thereby, credit, money or goods.

WYO.STAT. § 1–23–105 (1988).

It appears the statute authorizing discipline by the Commission of licensees for failure to obtain written listing agreements, and the Commission's regulations themselves, are consistent with the statute of frauds, particularly subsection (v), in charging licensees

with the duty of obtaining written listing agreements. An executory contract, in the sense there had been no performance by either side of any duties under it, might well result in sustaining the decision of the district court relative to public policy and its ruling that the contract is invalid.

■ If the requirement for a written listing agreement had been included in the general statute of frauds (WYO.STAT. § 1–23–105), however, an oral listing agreement would be enforceable under the protection given at common law to oral contracts performed outside of the statute. We have stated frequently that the statute of frauds can be satisfied by performance, and an oral contract is not vitiated by the requirements of the statute when one of the parties has performed fully. *E.g., Davis v. Davis,* 855 P.2d 342 (Wyo.1993); *Richardson v. Schaub,* 796 P.2d 1304 (Wyo.1990); *Lambousis v. Johnston,* 657 P.2d 358 (Wyo.1983). This common law exception to the statute of frauds is a version of equitable estoppel. It prevents a party to a contract from perpetrating a fraud or injustice on the other party when the latter has fully performed under the terms of the oral contract. *See* RESTATEMENT (SECOND) OF CONTRACTS § 139 (1981). We hold this common law remedy is a recognized exception to the requirements delineated in the statute of frauds in Wyoming. In our judgment, it is appropriate to invoke this exception with respect to any special statute of frauds as well as for our general statute of frauds. The legislature has the authority to adjust the common law by legislation, but the Commission, as a regulatory agency, does not enjoy that same authority.

■ We reverse the holding of the district court that, as a matter of public policy in Wyoming, a written listing agreement is a prerequisite to recovery of a real estate sales commission, if the contract has been performed by the broker. The broker's right to the commission should not be defeated under these circumstances when it is clear that the broker is the procuring cause for the sale of the property. If there had been no performance of the oral listing agreement by Bowen, the ruling of the district court in awarding a summary judgment to the Cooks might well have been correct. In this case, however, Bowen's performance, consisting of bringing an able and willing buyer to the closing who purchased the Cooks' property, removes this oral contract from the requirements of the statute.

In other jurisdictions, this result has been recognized in instances in which an oral listing agreement is proscribed by commission regulation. For example, the Supreme Court of Vermont, citing cases from other jurisdictions, affirmed the recovery of a sales commission in the absence of a written listing agreement that would have complied with the commission rules, stating:

> No statute requires that the violation of the regulation defeat plaintiffs' right to a commission. *See Coldwell Bankers–Gordon Co. Realtors v. Roling,* 703 S.W.2d 572, 576 (Mo.Ct.App.1986); *Finlay Commercial Real Estate, Inc. v. Paino,* 133 N.H. 4, 8, 573 A.2d 125, 127 (1990). The regulations do, however, reflect a public policy that may be used as a defense against a broker's enforcement of the listing agreement. *See* Restatement (Second) of Contracts § 179(a) (1981).

*MacDonald v. Roderick,* 158 Vt. 1, 603 A.2d 369, 372 (1992).

We accept the rationale espoused in these cases and hold public policy is not served by proscribing the recovery of a sales commission by a broker who has accomplished the sale, even though the written listing agreement was not prepared. We emphasize the equitable litany contained in our holding in *Battlefield, Inc. v. Neely,* 656 P.2d 1154, 1157 (Wyo.1983), where we stated:

> Courts do not like to aid litigants in avoiding their contractual obligations by joining in their games of hide-and-seek behind statutory technicalities—especially is this so where the other party has performed and the party looking to avoid the contract has reaped all the benefits of the performance. We will not aid and abet such efforts if we can possibly avoid it.

■ In this instance, we must agree with Bowen that there are genuine issues of material fact to be decided at trial. The district court still must determine what the terms of

the oral contract were, whether there was a breach of those terms, and the amount of damages. These issues of fact must be resolved upon remand.

The summary judgment entered by the trial court is reversed, and the case is remanded for trial.